UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

FERNAN Y. JARAMILLO,

        Plaintiff,

    v.

LATINO REGAL CORP. d/b/a EL TUCANAZO BAR, HORNADO ECUATORIANO CORP. d/b/a SAL Y PIMIENTA, NY ROMANTICOS INC. d/b/a ROMANTICOS, NY EL DIAMANTE CORP. d/b/a PRIMA DONA RISTORANTE, GUADALAJARA DE NOCHE INC. d/b/a LOS TEMERARIOS, JIMMY ZAMBRANO a/k/a GIOVANNY, EDUARDO BRITO a/k/a EL TIGRE, MANUEL CUSCO, MAXIMINO A. CISNEROS a/k/a ADOLFO, MARIA DUTAN, CARLOS CARRILLO, JORGE A. RIOS, AND CHRISTIAN TORAL

        Defendants,

**MEMORANDUM & ORDER**
19-cv-03104 (HG) (CLP)

---

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff Fernan Y. Jaramillo filed this action against Defendants Latino Regal Corp., doing business as El Tucanazo Bar ("El Tucanazo"), Hornado Ecuatoriano Corp., doing business as Sal y Pimienta ("Sal y Pimienta"), NY Romanticos Inc., doing business as Romanticos ("Romanticos"), NY El Diamante Corp., doing business as Prima Dona Ristorante ("Prima Dona"), Guadalajara De Noche Inc., doing business as Los Temerarios ("Los Temerarios"), collectively the "Restaurant Defendants," Jimmy Zambrano, also known as Giovanny, Eduardo Brito, also known as El Tigre, Manuel Cusco, Maximino A. Cisneros, also known as Adolfo, Maria Dutan, Carlos Carrillo, Jorge A. Rios, and Christian Toral, collectively the "Individual Defendants," alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL"), arising from the Defendants' employment

policies, patterns, and practices. Plaintiff seeks injunctive relief, a declaratory judgment, and monetary relief. ECF No. 1 at 28–29 (Complaint). Defendants El Tucanazo and Cisneros (the "Moving Defendants") now move for summary judgment, seeking to dismiss all claims against them. ECF No. 55 (Motion for Summary Judgment). For the reasons set forth below, the Court denies the Moving Defendants' motion for summary judgment.

## BACKGROUND

The parties dispute many of the key facts in this case. However, the following facts are undisputed. El Tucanazo is a bar located in Jackson Heights, Queens that has held a liquor license since January 26, 2012. ECF No. 57-1 ¶¶ 1–2 (Moving Defendants' Local Rule 56.1 Statement of Material Facts with Plaintiff's Responses). Between January 26, 2012, and September 30, 2020, Cisneros was the licensee for El Tucanazo's liquor license. *Id.* ¶¶ 3–4. Plaintiff began working at Sal y Pimienta around March 1, 2018, and began working at Los Temerarios around April 1, 2018. *Id.* ¶¶ 5–6. On December 2, 2018, Plaintiff was assaulted while working at Los Temerarios and filed a Workers' Compensation claim related to his injuries that listed his employer as Los Temerarios. *Id.* ¶¶ 8–9. The New York State Workers' Compensation Administrative Law Judge ("ALJ") who decided Plaintiff's claim determined that he was entitled to receive Workers' Compensation benefits through his employment at Los Temerarios. *Id.* ¶ 11. Plaintiff also alleges that Cisneros is the owner, officer, director, and/or managing agent of El Tucanazo, participated in the day-to-day operations of El Tucanazo, and makes all business decisions for El Tucanazo. ECF No. 1 ¶ 15. Although the Moving Defendants do not include this fact in their Rule 56.1 Statement of Material Facts, exhibits submitted by the Moving Defendants in support of their motion for summary judgment suggest

that they do not dispute this fact.[1]

The following facts, which the Court references only to provide a clear picture of Plaintiff's claims and does not take to be necessarily true for the purpose of this motion, are alleged by Plaintiff and disputed by the Moving Defendants. Plaintiff alleges that he began working at El Tucanazo on April 1, 2018, as an inventory clerk and that his work at El Tucanazo was coextensive with his work at Romanticos, Sal y Pimienta, Prima Dona, and Los Temerarios. ECF No. 57-2 ¶¶ 2–11 (Plaintiff's Declaration in Opposition to Summary Judgment). According to Plaintiff, El Tucanazo is part of a joint enterprise of Latin-style bar and restaurant establishments in Queens, that share a common group of owners and management. *Id.* ¶¶ 7–8. Plaintiff alleges that he worked approximately 84 hours per week among all the restaurants. ECF No. 1 ¶ 85.

Plaintiff filed his complaint on May 23, 2019, and asserted four claims against all Defendants. His first claim alleges that the Defendants violated the FLSA by failing to compensate him at the statutory overtime rate. His second, third, and fourth claims, respectively, allege that Defendants violated the NYLL by: (1) failing to pay him proper overtime compensation; (2) failing to provide him with written notice of his wage rate at the time he was hired; and (3) failing to provide him with wage statements. ECF No. 1 ¶¶ 116–136. In January and February of 2021, the Clerk of Court entered the defaults of all Defendants other than the

---

[1] In various exhibits submitted in support of their motion for summary judgment, the Moving Defendants state that: (1) Cisneros is the "sole shareholder of defendant LATINO REGAL CORP. d/b/a EL TUCANAZO BAR," *see* ECF No. 55-5 at 34 (Moving Defendants' Response to Plaintiff's Document Requests); (2) Cisneros is the "Chief Executive Officer" of El Tucanazo, *see id.* at 37; (3) Cisneros has had a 100% ownership interest in El Tucanazo since July 20, 2010, and is responsible for the daily management of the corporation and assets, *see* ECF No. 55-9 at 4 (El Tucanazo's Response to Plaintiff's Interrogatories); and (4) Cisneros is responsible for determining employees' compensation and work hours at El Tucanazo, *see id.* at 5.

3

Moving Defendants and Manuel Cusco[2] (the "Defaulting Defendants"). ECF Nos. 34, 36 (Clerk's Entries of Default). On March 23, 2021, Plaintiff moved for a default judgment against the Defaulting Defendants. ECF Nos. 37–39 (Motion for a Default Judgment). On April 5, 2021, the Court entered an order holding the motion in abeyance until the litigation with the Moving Defendants had concluded. ECF Text Order, April 5, 2021.

On August 16, 2022, the Moving Defendants served their motion for summary judgment. ECF No. 55. On September 13, 2022, Plaintiff served its opposition, and shortly thereafter the Moving Defendants served their reply. ECF Nos. 56, 57.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[3] The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "The role of the [C]ourt is not to weigh the evidence and

---

[2] Plaintiff's failure to seek a certificate of default with respect to Cusco appears to have been an error as Cusco has not appeared in this action.

[3] Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jin Dong Wang v. LW Rest, Inc.,* 81 F. Supp. 3d 241, 252 (E.D.N.Y. 2015). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).

## DISCUSSION

The Moving Defendants have moved for summary judgment on three grounds: (1) that El Tucanazo was not Plaintiff's employer under the FLSA; (2) that El Tucanazo was not Plaintiff's employer under the NYLL; and (3) that Cisneros is not personally liable under the FLSA or the NYLL because he was not Plaintiff's employer. For the reasons that follow, I find that genuine issues of material fact remain as to whether El Tucanazo and Cisneros were Plaintiff's employers under both federal and state law. Accordingly, summary judgment is not appropriate.

### I. There are Genuine Issues of Material Fact Regarding Whether El Tucanazo was Plaintiff's Employer Under the FLSA

El Tucanazo argues that it was not Plaintiff's employer and that, although Plaintiff alleges that "all the named Defendants acted as a 'joint enterprise,'" he cannot point to any evidence to support his contention that he worked at El Tucanazo or that El Tucanazo was run in concert with the other Restaurant Defendants. ECF No. 55 at 4–5. As evidence that El Tucanazo was not Plaintiff's employer, it asserts that Cisneros, rather than Zambrano or Brito, who Plaintiff alleges largely directed his work, is listed as its Chief Executive Officer in records filed with the New York Department of State and is listed as the Principal for its Liquor License.

5

*Id.*; ECF No. 55-5 at 37–40.  El Tucanazo also states that Plaintiff's complaint contains "mere conclusory allegations that he worked for the joint enterprise" without additional details and that Plaintiff himself testified that he was paid by Brito, who, Moving Defendants allege, is not affiliated with El Tucanazo.  ECF No. 55 at 5–6.  Finally, El Tucanazo denies that it employed Plaintiff and states that Plaintiff cannot show that it or its owner, Cisneros, knew Plaintiff was performing work at and for El Tucanazo.  ECF No. 55 at 7.

El Tucanazo also argues that the Court should take judicial notice of state administrative records that demonstrate that, when Plaintiff filed a Workers' Compensation claim after being assaulted at El Temerario, he listed El Temerario as his employer.  ECF No. 55 at 7–8.  El Tucanazo argues that because the ALJ handling Plaintiff's claim agreed that El Temerario was Plaintiff's employer, El Tucanazo cannot also be his employer.  *Id.*

"Broad coverage under the FLSA is essential to accomplish the statute's goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency.  Accordingly, the [Supreme] Court has consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013).  "[T]he FLSA's definition of employ stretches the meaning of employee to cover some parties who might not qualify as such under a strict application of traditional agency law principles."  *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008).  As such, "employment for FLSA purposes [i]s a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."  *Id.* at 141–42.  In determining whether an employer-employee relationship exists under the FLSA, the Court's analysis "should be grounded in economic reality rather than technical concepts" and must depend "upon the circumstances of the whole activity."  *Irizarry*,

6

722 F.3d at 105.  Additionally, "[t]he question of whether any [d]efendant is an FLSA 'employer' is a mixed question of law and fact, involving the application of a legal standard to a particular set of facts. . . .  Mixed questions of fact and law, such as this, are especially well-suited for jury determination" and "rarely suitable for summary judgment."  *Franco v. Ideal Mortg. Bankers LTD.*, No. 07-cv-3956, 2011 WL 317971, at *6 (E.D.N.Y. Jan. 28, 2011).

"An individual may simultaneously have multiple employers for the purposes of the FLSA, in which case, all joint employers are responsible, both individually and jointly, for compliance with all applicable provisions of the FLSA."  *Bin Gao v. Jian Song Shi*, No. 18-cv-2708, 2019 WL 3936810, at *6 (E.D.N.Y. Aug. 20, 2019).  "[A] determination of joint employment" is "fact-intensive," making any such determination ill-suited for summary judgment.  *Barfield*, 537 F.3d at 143–44.  District courts in this circuit typically analyze whether separate defendants may be jointly liable for FLSA violations using two separate tests:  the single integrated enterprise test or the joint employer test.  *See, e.g., Rosa v. La Oficina of Queens, Inc.*, No. 18-cv-6915, 2023 WL 2745214, at *5–6 (E.D.N.Y. Mar. 17, 2023), *report and recommendation adopted*, 2023 WL 2736237 (E.D.N.Y. Mar. 31, 2023).  Under either test, Plaintiff raises sufficient issues of material fact to make summary judgment in favor of El Tucanazo inappropriate.

### A.  The Single Integrated Enterprise Test

Under the single integrated enterprise test for FLSA liability, "multiple legally distinct entities [can be] liable as a single employer when the entities are a single integrated enterprise."  *Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-cv-7342, 2019 WL 1585163, at *4 (S.D.N.Y. Apr. 12, 2019); *see also Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14-cv-5269, 2016 WL 5092588, at *16 (E.D.N.Y. Sept. 19, 2016) ("The single integrated enterprise doctrine

7

allows for multiple defendants to be jointly and severally liable for any FLSA and NYLL violations."); *Romualdo v. Guru Krupa 105 Corp.*, No. 19-cv-5188, 2023 WL 6167614, at *5 (E.D.N.Y. Sept. 1, 2023) (Under the single integrated enterprise theory, "an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger single-employer entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer."). "Whether a group of entities qualifies as a single integrated enterprise turns on four-factors: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Tecocoatzi-Ortiz*, 2019 WL 1585163, at *4.; *see also Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) (articulating the same test for determining whether a single integrated enterprise exists). "Although no one factor is dispositive, control of labor relations is the central concern." *Tecocoatzi-Ortiz*, 2019 WL 1585163, at *4. "In the FLSA context—and more specifically, in the restaurant industry—facts that go to the existence of a single, integrated enterprise include, *inter alia*, common decor, name, menu, and marketing; the use of the same employees at multiple locations; the transfer of items between restaurants; use of the same central payroll office, common storage space and leases; and the distribution of common employee guidelines and procedures across different businesses." *Romualdo*, 2023 WL 6167614, at *5. In response to El Tucanazo's contentions that there is no evidence to suggest that it was part of a single integrated enterprise with the other Defendants that employed Plaintiff, *see supra* pp. 5–6, Plaintiff points to several facts that preclude a finding that El Tucanazo was not Plaintiff's employer at this stage.

First, Plaintiff has pointed to evidence from which a reasonable inference may be drawn that El Tucanazo and the other Restaurant Defendants may have interrelated operations.  During his deposition, Plaintiff testified that as part of his employment duties, he worked each day from 3:00 AM to 7:00 AM at Los Temerarios and from 2:00 PM to 10:00 PM going back and forth between Bar Romanticos, Sal Y Pimienta, El Tucanazo, and Prima Dona, and spent roughly two hours at each location.  ECF No. 55-7 at 50:10–53:20; 59:11–25 (Plaintiff's Deposition Testimony); ECF No. 57-2 ¶¶ 2–10.  Plaintiff also testified that, although his duties and responsibilities each day varied, typically at each bar he deposited money at the bank, received liquor and beer deliveries, paid bills, purchased supplies, and made any necessary repairs.  ECF No. 55-7 at 51:8–52:6, 62:5–64:8, 112:3–5; ECF No. 57-2 ¶¶ 7–11.

Plaintiff has also stated that the Restaurant Defendants shared employees.  In addition to himself, Plaintiff identified in his deposition and responses to Defendant's interrogatories, two other employees who worked at El Tucanazo and at another restaurant that was part of the alleged enterprise:  Raul, who served as the manager at El Tucanazo during the day and as the manager at Sal Y Pimienta during the night; and Ruben, who served as the manager at Sal Y Pimienta during the day and as the manager at El Tucanazo during the night.  ECF No. 55-7, at 37:14–20, 66:20–24, 82:5–19; ECF No. 57-2 ¶ 18; ECF No. 55-6 at 4 (Plaintiff's Interrogatory Responses).  Moving Defendants appear to agree that at least one of these employees worked at El Tucanazo – they identified "Ruben Gutierrez" as a former employee of El Tucanazo in their responses to Plaintiff's interrogatories.  ECF No. 55-9 at 2 (Moving Defendants' Interrogatory Responses).  Accordingly, Plaintiff has pointed to specific evidence that raises questions as to whether El Tucanazo and the other Restaurant Defendants had interrelated operations.  *See, e.g., Dobrosmylov v. DeSales Media Grp., Inc.* 532 F. Supp. 3d 54, 62 (E.D.N.Y. 2021) (courts

9

should consider whether entities share "employees" and "services" in determining whether they have interrelated operations).[4]

Plaintiff also points to facts that raise questions as to whether El Tucanazo shared common management with the other Restaurant Defendants and whether there was centralized control of labor relations among the Restaurant Defendants. Plaintiff testified that his work at El Tucanazo and the other four bars was, in part, controlled by Zambrano, who was responsible for initially instructing Plaintiff to work at El Tucanazo and who he often saw at El Tucanazo. ECF No. 55-7 at 33:25–36:6, 83:7–11, 90:8–18; ECF No. 57-2 ¶¶ 7–11, 19. Plaintiff also testified that, on many occasions, his work at El Tucanazo was directed by Cisneros, who he was told was Zambrano's business partner and who the parties agree was the owner of El Tucanazo. ECF No. 55-7 at 90:19–91:21; ECF No. 57-2 ¶¶ 15–16, 21. Plaintiff testified that he would collect his payment for his work at the Restaurant Defendants from different locations, including El Tucanazo, and that he was often paid by Brito or Raul. ECF No. 55-7 at 89:2–12; 58:2–6; ECF No. 57-2 ¶ 14. These facts, in addition to Plaintiff's allegations about employees working at multiple locations, *see supra* p. 9, are sufficient to preclude the Court from finding that El Tucanazo was not part of a single integrated enterprise that employed Plaintiff. *See Juarez v.*

---

[4] The Court also notes that in Moving Defendants' responses and objections to Plaintiff's document requests, Moving Defendants asserted that they were "not currently in possession" of El Tucanazo's tax returns from 2018 onwards, of receipts related to El Tucanazo's sales, or of bank account statements and that they would conduct a search "to determine whether or not the requested documents can be located." ECF No. 55-5 at 6–8 (Moving Defendants' Responses to Plaintiff's Requests for Production). However, Moving Defendants also asserted that Defendant Cisneros was the sole owner of El Tucanazo and responsible for the "daily management of Corporation and assets" and that the only other current or former employee of El Tucanazo is Ruben Gutierrez. ECF No. 55-9 at 3–7. The Court does not see how it can be the case that Cisneros is the sole owner of El Tucanazo, responsible for all management and assets, and one of only two employees yet is not in possession of or able to locate El Tucanazo's tax returns, receipts, and bank account statements. Moving Defendants' response suggests that perhaps the requested documents are in the possession of another entity or individual in concert with which El Tucanazo operated.

*449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 368 (S.D.N.Y. 2014) (applying the single integrated enterprise test and noting that: (i) facts suggesting that the same individuals manage and oversee operations at multiple locations suggest common management and (ii) facts related to common pay practices and employees working at multiple locations suggest centralized control of labor operations).

### B. The Joint Employer Test

Because the Court has already concluded that Plaintiff raised sufficient issues of material fact to preclude the granting of summary judgment, the Court does not need to reach the question of whether El Tucanazo could be considered Plaintiff's employer under the joint employer test. However, for the sake of completeness, the Court will also analyze whether there are issues of material fact impacting any determination as to whether El Tucanazo jointly employed Plaintiff with the other Restaurant Defendants. In applying the joint employer test, courts must look at "the circumstances of the whole activity, viewed in light of the economic reality." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003). "To determine whether an entity has formal control over alleged employees, courts look at whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104–05; *see also Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 284 (E.D.N.Y. 2013) (outlining the same test). "These factors do not, however, comprise a rigid rule for the identification of a FLSA employer, but rather provide a guideline to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Jin Dong Wang,* 81 F. Supp. 3d at 253. "In certain circumstances, an entity can be a joint employer under

11

the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them." *Zheng*, 355 F.3d at 70–71. Ultimately, courts must determine whether "an entity has functional control over workers even in the absence of [] formal control." *Id.* at 72.

In *Zheng*, the Second Circuit identified a number of relevant factors that courts could use to determine whether an entity lacking formal control under the four-factor test articulated above could nevertheless exercise "functional control" over an employee and thus be a joint employer. *Id.* As relevant here, the *Zheng* factors include: (1) "whether [the alleged joint employer's] premises and equipment were used for [Plaintiff's] work;" and (2) "the degree to which the [alleged joint employer] or [its] agents supervised [Plaintiff's] work." *Id.* Viewed in the light most favorable to Plaintiff, the evidence that the Court has already summarized suggests that, considering the economic realities, Plaintiff may have been jointly employed by El Tucanazo and the other Restaurant Defendants. Plaintiff has alleged that he worked for at least two hours each day at El Tucanazo; that Cisneros and Ruben supervised his work; and that at times he was paid for his work at all the Restaurant Defendants by Ruben and at El Tucanazo. *See supra* Section I.A. Accordingly, Plaintiff has "satisfied [his] obligation to set forth specific facts showing that there is a genuine issue for trial" as to whether he was jointly employed by El Tucanazo, and El Tucanazo's motion for summary judgment must therefore be denied for this additional reason. *Orellana v. One If By Land Rest. LLC*, No. 18-cv-7865, 2020 WL 5768433, at *10 (S.D.N.Y. Sept. 27, 2020); *see also Teri v. Spinelli*, 980 F. Supp. 2d 366, 375 (E.D.N.Y. 2013) (holding that "[a] district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship" and concluding that plaintiff was jointly employed based on a variety of factors including shared employees, the method of compensation, and shared resources).

### C. The Impact of the Workers' Compensation Board Decision on the Determination of Plaintiff's Employer

As discussed above, El Tucanazo's contention that it cannot be Plaintiff's employer because an ALJ decision listed Los Temerarios as Plaintiff's employer must fail because under the FLSA, "[a]n individual may simultaneously have multiple employers," which are "responsible, both individually and jointly, for compliance with all applicable provisions of the FLSA." *Bin Gao v. Jian Song Shi*, No. 18-cv-2708, 2019 WL 3936810, at *6 (E.D.N.Y. Aug. 20, 2019).[5] Accordingly, a finding that Los Temerarios employed Plaintiff does not preclude the possibility that El Tucanazo also employed Plaintiff. Additionally, it would not be appropriate for this Court to take judicial notice of testimony, statements, or findings contained within the ALJ's decision because courts "may only take judicial notice of documents from prior proceedings to establish the fact of such litigation and related filings and not for the truth of the matters asserted in the other litigation." *Cabrera v. Schafer*, 178 F. Supp. 3d 69, 73 (E.D.N.Y. 2016); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (same). Here, El Tucanazo does "not simply ask the Court to take judicial notice of the fact[] that the Plaintiff initiated a proceeding before the Workers' Compensation Board . . . [r]ather, [it asks] the Court to take judicial notice of select quotes" from those decisions. *Cabrera*, 178 F. Supp. 3d, 73. The Court therefore declines to take judicial notice of quotes in the Workers' Compensation Board decision related to Plaintiff's employer. *Id.*

---

[5] Although the Court is not taking judicial notice of the Workers' Compensation Board decision, the Court has reviewed the exhibits related to the decision that the Moving Defendants attached to their summary judgment briefing. The Court notes that the records do not suggest that the ALJ was faced with the question of whether Plaintiff had another employer other than Los Temerarios and that nowhere in those records does the ALJ make a determination that Los Temerarios was Plaintiff's *only* employer.

13

## II. There are Genuine Issues of Material Fact Regarding Whether El Tucanazo was Plaintiff's Employer Under the NYLL

### *A. The Test for Determining Whether an Individual is an Employee Under the NYLL is the Same as the Test Under the FLSA*

The parties agree that the definition of an employee under the NYLL, "closely resembles the definition in the FLSA." *Gyalpo v. Holbrook Dev. Corp.*, 577 B.R. 629, 638 (E.D.N.Y. 2017); *see also* ECF No. 55 at 9; ECF No. 57 at 9. Because the definitions are so similar, "[d]istrict courts in this Circuit have interpreted the definition of employer under the New York Labor Law coextensively with the definition used by the FLSA." *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013); *see also Cruz v. Rose Assocs., LLC*, No. 13-cv-0112, 2013 WL 1387018, at *2 (S.D.N.Y. Apr. 5, 2013) (noting that the definitions of employer under either act are coextensive); *Hernandez v. La Cazuela de Mari Rest., Inc.*, 538 F. Supp. 2d 528, 534–35 (E.D.N.Y. 2007) ("the question of whether an individual is an employer under New York law involves the same considerations as those under federal law").

Like the FLSA, the "NYLL recognizes the concept of a single-integrated or joint enterprise." *Gyalpo*, 577 B.R. at 639. Courts regularly apply both tests under the NYLL as well as under the FLSA to determine whether entities are part of a single-integrated enterprise or joint employers. *See, e.g., Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013) (applying the economic reality analysis under both the FLSA and the NYLL to determine whether an entity employed an individual and holding that courts "regularly appl[y] the same tests to determine, under the FLSA and NYLL, whether entities [a]re joint employers"); *Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 278 (E.D.N.Y. 2005) ("Courts hold that the New York Labor Law embodies the same standards for joint employment as the FLSA."); *Ayala*, 2016 WL 5092588, at *16 ("The single integrated enterprise doctrine allows for multiple defendants to

14

be jointly and severally liable for any FLSA and NYLL violations."). Accordingly, for the reasons stated in Sections I.A. and I.B., *supra*, the Court finds that Plaintiff has raised genuine issues of material fact regarding whether El Tucanazo was Plaintiff's employer under the NYLL. *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 134 (S.D.N.Y. 2014) (analyzing whether defendants "qualify as employers under the FLSA and NYLL together, using the FLSA standard, because any difference between the two definitions would be immaterial").

### B. Plaintiff is Not Precluded from Arguing that El Tucanazo was his Employer Under the NYLL

El Tucanazo also argues that Plaintiff should be collaterally estopped from arguing that it was his employer under the NYLL because the Workers' Compensation Board issued a decision that listed Los Temerarios as his employer. Collateral estoppel "gives conclusive effect to an administrative agency's determination where . . . the issue sought to be precluded is identical to a material issue necessarily decided by the administrative agency." *Rahman v. Museum of Nat. Hist., City of New York*, No. 10-cv-921, 2012 WL 1077679 at *8 (E.D.N.Y., March 30, 2012). Here, the issue sought to be precluded, whether Plaintiff was employed by both Los Temerarios and El Tucanazo, is not identical to the issue decided by the Workers' Compensation Board. The issue before the ALJ was not which one of Los Temerarios or El Tucanazo employed Plaintiff or whether the owners of those institutions were engaged in a joint enterprise. ECF No. 55-8 (Workers' Compensation Board Records). Rather, the question before the Board was whether Plaintiff was entitled to compensation related to the injuries he sustained while working at Los Temerarios. *Id.* The issue necessarily decided by the Board was not whether Plaintiff was employed by Los Temerarios to the exclusion of being jointly employed elsewhere.

Accordingly, the relevant issue here, whether Plaintiff was jointly employed by the Restaurant Defendants, was not "completely and necessarily decided by the Workers'

15

Compensation Board" and, the Court will not give the Board's decision preclusive effect. *Sloth v. Constellation Brands, Inc.*, 924 F. Supp. 2d 561, 469–71 (W.D.N.Y. 2013) (declining to give preclusive effect to a Workers' Compensation Board decision because "the workers' compensation issues decided by the Board" were "distinct" from the issues raised in the district court proceeding).

> III.   There are Genuine Issues of Material Fact Regarding Whether Cisneros was Plaintiff's Employer

Finally, Cisneros argues that he is not liable under the FLSA or the NYLL because Plaintiff has not presented any evidence that Cisneros had control over Plaintiff, his work schedule, his pay, or his hours. ECF No. 55 at 13–15. "The question of whether a[n individual] defendant is an employer under the FLSA is a mixed question of law and fact, with the existence and degree of each relevant factor lending itself to factual determinations. Therefore, individual employer liability is rarely suitable for summary judgment." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012). To determine individual employer liability within an enterprise, courts generally look at whether "the individual possessed operational control over employees." *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018). "A person exercises operational control over employees if his role [] within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* Courts often look at the same four factors used to determine whether entities are joint employers to help analyze whether an individual faces liability under the FLSA or the NYLL. *Id.* These factors are whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* As with joint employer liability, none of these factors is "dispositive such that

16

courts may apply more expansive tests if appropriate." *Dacas v. Duhaney*, No. 17-cv-3568, 2022 WL 5422709, at *8 (E.D.N.Y. Aug. 11, 2022), *report and recommendation adopted*, No. 17-cv-3568, 2022 WL 4483188 (E.D.N.Y. Sept. 27, 2022); *see also Zhao v. Ke Zhang Inc.,* No. 18-cv-6452, 2021 WL 1210369, at *4 (E.D.N.Y. Mar. 31, 2023) ("These factors are sufficient, but not necessary, to establish employer status.").

Being an employer under the FLSA or the NYLL "does not require the continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees . . . even if an employer's controls were restricted or exercised only occasionally, that does not remove the employee from the protections of the FLSA." *Hart*, 967 F. Supp. 2d at 912. "That an employer does not exercise control continuously or consistently does not diminish the significance of its existence." *Id.* For example, "owners that do not directly supervise workers may nonetheless be deemed employers under the FLSA where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions." *Morangelli*, 922 F. Supp. 2d at 284. Evidence indicating "an individual's authority over management, supervision, and oversight of a company's affairs in general is relevant to the totality of the circumstances in determining the individual's operational control of the company's employment of the plaintiff employee[]." *Irizarry*, 722 F.3d at 110. Although a company's owner "must have at least some degree of involvement in the way the company interacts with employees to be a FLSA employer," nothing "in the FLSA itself[] requires an individual to have been personally complicit in FLSA violations." *Id.* at 107–110.

Here, Plaintiff has raised sufficient issues of material fact regarding Defendant Cisneros's role at El Tucanazo to preclude the Court from finding that, as a matter of law, Cisneros was not

17

Plaintiff's employer under the FLSA or the NYLL. The parties agree that Cisneros is the owner, sole shareholder, and Chief Executive Officer of El Tucanazo. ECF No. 1 ¶ 15; ECF No. 55-5 at 34, 37. Moving Defendants admit that Cisneros "is responsible for the daily management of [El Tucanazo and its] assets" and for determining employees' compensation and work hours. ECF No. 55-9 at 4. Because the Court has already determined that it cannot, as a matter of law, conclude that El Tucanazo was not Plaintiff's employer under the FLSA or the NYLL, *see supra* Sections I and II, Cisneros's admitted ownership of El Tucanazo combined with his admission that he determines employee compensation and work hours preclude the Court from concluding as a matter of law that Cisneros does not have the requisite operational control over El Tucanazo to be considered an employer. *Morangelli*, 922 F. Supp. 2d at 284. Additionally, Plaintiff has alleged that on occasions Cisneros directed his work at El Tucanazo, that he was often paid for his work at the Restaurant Defendants at El Tucanazo, and that Cisneros was often present when he was working at El Tucanazo. ECF No. 55-7 at 68:6–69:20; 82:2–12; 90:19–91:21; ECF No. 57-2 ¶¶ 14, 21. These facts raise additional issues of material fact as to whether Cisneros had the requisite "degree of involvement in the way the company interacts with employees" to be an employer under the FLSA or the NYLL. *Irizarry*, 722 F.3d at 107. Accordingly, viewing the evidence in the light most favorable to Plaintiff, Cisneros's motion for summary judgment must be denied. *Orellana* 2020 WL 5768433, at *10 (S.D.N.Y. Sept. 27, 2020).

## **CONCLUSION**

For the foregoing reasons, the Court DENIES the Moving Defendants' motion for summary judgment. The parties' proposed joint pretrial order is due on January 22, 2024. The parties are reminded that their joint pretrial order must comply with the requirements set forth in Section VI.B. of the Court's Individual Practices.

SO ORDERED.

                                                          */s/ Hector Gonzalez*
                                                           HECTOR GONZALEZ
                                                           United States District Judge

Dated: Brooklyn, New York
       December 21, 2023