UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
FERNAN Y. JARAMILLO, *individually and
on behalf of all employees similarly
situated*,

                    Plaintiffs,

          - against -

LATINO REGAL CORP. d/b/a El Tucanazo
Bar, *et al.*,

                 Defendants.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
19 CV 3104 (HG) (CLP)

      On May 23, 2019, plaintiff Fernan Y. Jaramillo ("Jaramillo") commenced this collective

and class action on behalf of himself and all other similarly situated employees of defendants

Latino Regal Corp., d/b/a El Tucanazo Bar ("Latino Regal"), Hornado Ecuatoriano Corp., d/b/a

Sal y Pimienta ("Hornado"), NY Romanticos Inc., d/b/a Romanticos ("Romanticos"),

Guadalajara De Noche Inc., d/b/a Los Temerarios ("Guadalajara"), NY El Diamante Corp., d/b/a

Prima Dona Ristorante ("El Diamante") (collectively, the "corporate entities"), Jimmy

Zambrano, a/k/a Giovanny ("Zambrano"), Eduardo Brito, a/k/a El Tigre ("Brito"), Manuel

Cusco ("Cusco"), Maximino A. Cisneros, a/k/a Adolfo ("Cisneros"), Maria Dutan ("Dutan"),

Carlos Carrillo ("Carrillo"), Jorge A. Rios ("Rios"), and Christian Toral ("Toral") (collectively

with the corporate entities, "defendants").  The Complaint alleges that defendants had violated

the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), by failing to pay wages for

overtime work performed, as well as by failing to pay overtime wages and failing to provide

wage notices at the time of hiring and paystubs, in violation of New York Labor Law §§ 650 *et*

*seq.* ("NYLL"), and the supporting New York Codes, Rules, and Regulations § 146 ("N.Y.C.R.R."). (Compl.[1] ¶¶ 2-4).

Presently before this Court are plaintiff's two Motions for Default Judgment: (1) the first one, filed on February 12, 2024, seeks default judgment against defendants Hornado, Romanticos, El Diamante, Guadalajara, Zambrano, Brito, Dutan, Carrillo, Rios, and Toral (ECF No. 66); (2) the second one, filed on June 17, 2024, seeks default judgment against defendants Latino Regal and Cisneros (ECF No. 86).[2]

For the reasons set forth below, the Court respectfully recommends that default judgment be entered against all defendants, and that plaintiff be awarded the following damages: (1) $58,348.15 for unpaid overtime wages under the NYLL; (2) $58,348.15 in liquidated damages; (3) $14.38 per day in pre-judgment interest, starting on October 11, 2018, until final judgment is entered; (4) post-judgment interest until the judgment is paid in full; and (5) $43,983.65 in attorney's fees and costs. The Court further respectfully recommends that the defendants be held jointly and severally liable for the judgment.

## PROCEDURAL HISTORY

Following the filing of the Complaint on May 23, 2019, plaintiff served each of the defendants with a copy of the Summons and Complaint as follows: Hornado and Guadalajara on May 23, 2019; Latino Regal, El Diamante, and Romanticos on June 10, 2019; Cisneros and Carrillo on June 12, 2019; Rios, Dutan, and Toral on June 21, 2019; Brito on July 10, 2019; and Zambrano on July 11, 2019. (ECF Nos. 15-21, 29-32). When defendants Hornado, El Diamante, Romanticos, and Guadalajara failed to file an Answer or otherwise respond to the

---

[1] Citations to "Compl." refer to the Collective & Class Action Complaint, filed on May 23, 2019 (ECF No. 1).

[2] The remaining defendant, Manuel Cusco, was voluntarily dismissed from the action by Order of the district court, filed January 11, 2024.

pleadings, the Clerk of Court entered a Notice of Default on January 22, 2021. (ECF No. 34). The Clerk subsequently entered a default against Carrillo, Brito, Zambrano, Rios, Dutan, and Toral on February 2, 2021, when they failed to respond to the Complaint. (ECF No. 36). On March 23, 2021, plaintiff filed his first Motion for Default Judgment against all of these defaulting defendants. (ECF No. 37). Given that two defendants were proceeding to litigate the case, the court denied the default judgment motion, (Electronic Order, dated April 5, 2021), and plaintiff subsequently filed an Amended Motion on February 12, 2024. (ECF No. 66). (See discussion infra, at 36-37).

Since defendants Latino Regal and Cisneros proceeded to litigate the action, no default was entered against them until May 17, 2024. (ECF Nos. 83, 84). On April 11, 2024, the district court directed defendants' counsel to move to withdraw by April 18, 2024, and ordered Cisneros to indicate by May 2, 2024, if he intended to proceed to represent himself pro se, and/or whether new counsel would be retained for him and the corporate entity. (ECF No. 79). On May 7, 2024, the Court granted counsel's Motion to Withdraw and directed entry of default when Cisneros and Latino Regal failed to provide the information directed by the court in its April 11, 2024 Order. (Electronic Order, dated May 7, 2024). Plaintiff thereafter filed the second Motion for Default Judgment on June 17, 2024. (ECF No. 86).

Since both Motions raise essentially the same issues, the Court has considered them together.

<u>FACTUAL BACKGROUND</u>

In his Complaint, plaintiff Jaramillo alleges that the various corporate defendants are a conglomerate of Latin-style bar and restaurant establishments in Queens, New York, owned by the individual defendant Zambrano, and managed by defendant Brito, the General Manager of

the corporate entities.  Defendant Rios is alleged to be a principal of Hornado; defendant Dutan is alleged to be a principal of Romanticos; defendant Toral is alleged to be a principal of El Diamante; defendant Carrillo is alleged to be a principal and Chief Executive Officer of Guadalajara; and defendant Cisneros is alleged to be a principal of Latino Regal.  (Compl. ¶¶ 8-74).  Plaintiff seeks to hold each individual defendant jointly and severally liable with the corporate defendants of which they are alleged to be principal.  (Id.)

Plaintiff alleges that Zambrano, the owner, officer, director, or managing agent of each of the corporate defendants, was an "employer" under the FLSA and NYLL, who participated in the daily operations of the corporate entities, and made all the business decisions, including the number of hours worked and salary to be paid to the employees.  (Id. ¶¶ 13-14, 26-27, 42-43, 55-56, 68-69).  Plaintiff further alleges that defendant Brito was plaintiff's direct supervisor under defendant Zambrano; he was general manager and managing agent of each of the corporate defendants, responsible for managing the businesses, making decisions as to hours worked and salary to be paid to the employees, and paying plaintiff his wages.  (Id. ¶¶ 18-20, 34-36, 47-49, 60-62, 73-75).

Defendant Cisneros is alleged to be an owner, officer, director and managing agent of Latino Regal, who also participated in the day-to-day operations of the business, and who is listed as the Chief Executive Officer on the New York State Division of Corporations' database and as a principal on the Liquor Authority licensing database.  (Id. ¶¶ 15-17).  Defendant Rios is listed as a principal of Hornado on the Liquor Authority licensing database, and is alleged to be a supervisor, manager or managing agent, participating in the day-to-day operations of Hornado. (Id. ¶¶ 31-33).  Plaintiff makes similar claims against defendant Dutan, who is listed as a

principal of Romanticos on the Liquor Authority licensing database (id. ¶¶ 44-46),[3] against defendant Toral, who is listed as a principal of El Diamante on the Liquor Authority licensing database (id. ¶¶ 57-59), and against defendant Carrillo, who is listed as the Chief Executive Officer of Guadalajara on the New York State Division of Corporations' database and as a principal of Guadalajara on the Liquor Authority licensing database.  (Id. ¶¶ 70-72).

According to the Complaint, defendant Latino Regal had gross sales in excess of $500,000 per year and purchased and handled goods and supplies that moved in interstate commerce (id. ¶¶ 9, 10), as did defendant Hornado (id. ¶¶ 22, 23), defendant Romanticos (id. ¶¶ 38, 39), defendant El Diamante (id. ¶¶ 51, 52), and defendant Guadalajara (id. ¶¶ 64, 65). Plaintiff further alleges that the corporate defendants are commonly owned and have the same corporate leadership, with defendant Zambrano, the owner of each corporate entity, being in charge of all aspects of management and operation.  (Id. ¶¶ 76(a), (c)).

Plaintiff claims that from March 2018 to January 1, 2019, he was employed as an inventory clerk for defendants.  (Id. ¶ 81).[4]  From approximately March 1, 2018 until May 31, 2018, he worked six days per week, from 8:00 p.m. until 4:30 a.m., maintaining the liquor inventory at Hornado, performing general maintenance and cleaning duties as well.  (Id. ¶ 82). During this period, when he worked 51 hours per week, he was paid $660.00 in cash regardless of the hours worked.  (Id. ¶ 83).

---

[3] In his Complaint, plaintiff alleges that Dutan is listed as the "Principal of Sal Y Pimienta [Hornado] on the New York State's Liquor Authority licensing database."  (Compl. ¶ 46).  The Court notes that all other allegations in the Complaint appear to connect Dutan to Romanticos.

[4] Although the Affirmation of Fernan Y. Jaramillo in Support of Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55(B)(2), first filed on March 23, 2021 (ECF No. 38-2) ("Jaramillo Aff."), lists the end date of the first period of his claim as March 31, 2018, the Complaint states that the first period ran from March 1, 2018 until May 31, 2018.  (Compare Jaramillo Aff. ¶ 3 with Compl. ¶ 82).  Furthermore, the Complaint itself is internally inconsistent in alleging the beginning and end of the two distinct periods of underpayment at issue.  (Compl. ¶¶ 82, 84).

From approximately April 1, 2018 to January 1, 2019,[5] plaintiff was in charge of maintaining the liquor inventory for all of the defendant entities and he was required to visit each restaurant during the day and night.  (Id. ¶ 84).  During this period, plaintiff worked seven days per week from 2:00 p.m. until 10:00 p.m. at Hornado, Latino Regal, Romanticos, and El Diamante, and then from 3:00 a.m. until 7:00 a.m. at Guadalajara, for a total of twelve hours per day or 84 hours per week.  (Id. ¶ 85).  For this period, he was paid $890.00 in cash regardless of the number of hours worked.  (Id. ¶ 86).

Plaintiff alleges that he reported directly to defendant Zambrano, or to defendant Brito when Zambrano was absent, and that Brito paid plaintiff.  (Id. ¶ 87).  According to plaintiff, defendants did not have any means to track the plaintiff's hours and he was paid based on a flat weekly salary.  (Id. ¶ 88).  Plaintiff claims that he never received any overtime pay, and that defendants knowingly and willfully failed to pay plaintiff his overtime compensation and failed to provide a written wage notice or paystubs in violation of the NYLL.  (Id. ¶¶ 77, 89, 91, 92, 93, 97).

Plaintiff brings claims for unpaid overtime wages under the FLSA and NYLL (Counts I and II), as well as claims under New York Labor Law §§ 195-1 and 195-3 for failing to provide a time of hire wage notice and proper paystubs.  (Counts III and V[6]).

## DEFAULT JUDGMENT

I.    Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

---

[5] The Jaramillo Affirmation again differs slightly from the allegations in the Complaint in that the Complaint alleges that the second period of his employment ended as of January 1, 2019, while the Affirmation lists the end date as December 2, 2018. (Compare Compl. ¶ 84 with Jaramillo Aff. ¶ 6).

[6] Although the Complaint contains only four counts, the final count is labelled "Count V."

failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-step process for the entry of default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See id.  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc., No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and "doubts should be resolved in favor of the defaulting party."  Id.  See also Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").  Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified circumstances, not that it must."  Erwin

DeMarino Trucking Co. v. Jackson, 838 F. Supp. at 162.  Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default.  See, e.g., id.

The Court has significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the claims were adequately pleaded in the complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); (2) "whether the grounds for default are clearly established," Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023) (quoting Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992)); and (3) the amount of money potentially involved – "the more money involved, the less justification for entering the default judgment."  Id. Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiffs have been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants.  See Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., No. 10 CV 9250, 2012 WL 3194968, at *5 (S.D.N.Y. Aug. 7, 2012).

The burden is on the plaintiff to establish his entitlement to recovery.  See Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint,  "except those relating to damages."

Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3 (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  However, "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action."  Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.

II.    Adequacy of Pleadings

Before recommending that the district court enter default judgment as to some or all of plaintiff's claims, the Court is obligated to review the allegations in the Complaint and confirm that each of the elements of plaintiff's claims have been adequately pleaded.  See Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010).  In doing so, the Court accepts plaintiff's factual allegations as true.  See id.; Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3.

In this case, plaintiff alleges that defendants violated FLSA Sections 207(a)(1), 29 U.S.C. § 207(a)(1), by failing to pay overtime, at the rate of one-and-a-half times the regular rate, for all hours worked above 40 in a workweek.  (Compl. ¶¶ 77, 89, 120; Pl.'s Mem. 1[7] at 2-3; Pl.'s Mem. 2[8] at 2-3).  Plaintiff also alleges that defendants violated the New York Labor Law not only by failing to pay plaintiffs the proper amount in overtime, but also by failing to provide wage notice and wage statements as required by the NYLL. (See Compl. ¶¶ 125, 126, 129-131, 134-136; see also Pl.'s Mem. 1 at 3-4; Pl.'s Mem. 2 at 3-4).  Plaintiff seeks to recover from defendants, jointly and severally, an amount equivalent to unpaid overtime wages and liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216(b), and the NYLL, N.Y. Lab. L. §§ 198, 663;

---

[7] Citations to "Pl.'s Mem.1" refer to plaintiff's Memorandum of Law in Support of Plaintiff's Motion for a Default Judgment Against Defendants Hornado Ecuatoriano Corp., NY Romanticos Inc., NY El Diamante Corp., Guadalajara de Noche Inc., Jimmy Zambrano, Eduardo Brito, Maria Dutan, Carlos Carrillo, Jorge A. Rios, and Christian Toral, filed February 12, 2024 (ECF No. 68).

[8] Citations to "Pl.'s Mem. 2" refer to plaintiff's Memorandum of Law in Support of Plaintiff's Motion for a Default Judgment Against Defendants Latino Regal Corp., d/b/a El Tucanazo Bar and Maximino A. Cisneros, a/k/a Adolfo, filed June 17, 2024 (ECF No. 86-1).

statutory damages under the NYLL, N.Y. Lab. L. §§ 195-1, 195-3; pre- and post-judgment interest; and attorneys' fees and costs.  (Compl. ¶¶ 129-132, 134-136, p. 29).

A.  <u>FLSA Overtime Claims</u>

The FLSA provides that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Overtime is calculated at a rate of one and one-half times the employee's regular hourly pay for work performed in excess of 40 hours per week.  <u>Id.</u>

To establish a claim under the FLSA, a plaintiff must prove four elements:

1)  That the defendant failed to pay the mandated overtime wage;

2)  That the defendant is a covered employer under either the "individual coverage" theory or the "enterprise coverage" theory;

3)  That plaintiff is an "employee" within the meaning of the FLSA; and

4)  That the employment relationship is not one that is exempted from the FLSA.

<u>See</u> <u>id.</u>; <u>Rosenbaum v. Meir</u>, No. 20 CV 4520, 2023 WL 2305960, at *4 (E.D.N.Y. Mar. 1, 2023); <u>Edwards v. Community Enters., Inc.</u>, 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing <u>Tony & Susan Alamo Found. v. Secretary of Lab.</u>, 471 U.S. 290, 295 (1985)).  Accepting the allegations in the Complaint as true, the Court concludes that plaintiff has satisfied each of those elements.

1.  <u>Underpayments</u>

Plaintiff alleges that during his period of employment with the defendants, he was scheduled to work six days a week for approximately 8- and one-half hours per day or a total of

51 hours per week from approximately March 1, 2018 to around May 31, 2018.  (Compl. ¶ 82).[9]

Thereafter, from April 1, 2018 to January 1, 2019, he was scheduled to work seven days a week,

12 hours per day, or a total of 84 hours per week.  (Id. ¶ 85).  The Complaint further alleges that

although Mr. Jaramillo routinely worked more than 40 hours per week, he was paid a flat rate

and not paid overtime for the hours he worked beyond 40.  (Id. ¶¶ 83, 86, 89, 92).[10]  Setting aside

the discrepancy in dates, and accepting the remaining allegations as true, the Court concludes

that plaintiff was not adequately compensated for hours worked in excess of 40 hours per week.

## 2.  Covered Employer

For purposes of determining employer status under the "Enterprise Coverage" theory, a

defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce"

if the defendant:

> has employees engaged in commerce or in the production of goods
> for commerce, or that has employees handling, selling, or
> otherwise working on goods or materials that have been moved in
> or produced for commerce by any person; and . . . whose annual
> gross volume of sales made or business done is not less than
> $500,000.

29 U.S.C. § 203(s)(1)(A).

"[L]iability under the FLSA extends to any 'employer'" once the plaintiff has established

individual or enterprise coverage.  Gordon v. General Prop. Mgmt. Assocs., Inc., 496 F. Supp. 3d

830, 836 (S.D.N.Y. 2020) (quoting 29 U.S.C. § 216(b)).  Under the FLSA, an "employer" is

defined as "any person acting directly or indirectly in the interest of an employer in relation to an

employee . . . ."  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership,

---

[9] See n.4, supra.  The Court concludes that the May 31, 2018 date was a typographical error and should have been March 31, 2018, based on Mr. Jaramillo's sworn affidavit and the other dates in the Complaint.  The Court has assessed damages based upon this conclusion below.

[10] Although plaintiff makes the same allegations for other individuals similarly situated to Mr. Jaramillo (id. ¶¶ 90, 100, 111), he is not seeking damages for the other individuals in these motions for default judgment.

association, corporation, business trust, legal representative, or any organized group of persons."
29 U.S.C. § 203(a).

In the Complaint, plaintiff alleges that the corporate defendants have had gross revenues
in excess of $500,000, and that they have been and continue to be employers engaged in
interstate commerce and/or the production of goods for commerce within the meaning of the
FLSA.  (Compl. ¶¶ 9, 10, 22, 23, 38, 39, 51, 52, 64, 65).  For purposes of a default judgment
motion, that is sufficient to establish that the corporate defendants are covered employers under
the enterprise coverage theory.  See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d
19, 33 (E.D.N.Y. 2015) (stating that it was "reasonable to infer" that a "Peruvian restaurant with
an eat-in dining area and over $500,000.00 in annual sales" utilized a "wide variety of materials
to operate," at least some of which were likely "moved or were produced in interstate
commerce").

As for the individual defendants, "whether there is an employer-employee relationship
between an individual defendant and an FLSA plaintiff" under that definition of employer
depends, at least in substantial part, upon "whether the alleged employer (1) had the power to
hire and fire the employees, (2) supervised and controlled employee work schedules or
conditions of employment, (3) determined the rate and method of payment, and (4) maintained
employment records."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 35 (quoting
Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir.1984)).

As for the individual defendants, plaintiff alleges that they are either an owner, manager,
chief executive officer, or principal of the various corporate defendants, and that they managed
the day-to-day operations of the corporate entities, supervised the employees, including setting

their schedules and salaries and that defendant Zambrano had the power to hire and fire employees.  (See discussion supra, at 3-6).

In the context of these Motions, where defendants have elected not to challenge plaintiff's claims, the Court accepts these uncontested allegations as true.  Thus, the Court finds that the corporate defendants are an "enterprise engaged in commerce or in the production of goods for commerce," and that the individual defendants are also "employers" as defined by the FLSA.

### 3.  Non-exempt Employee Status

Finally, the Court turns to the third and fourth elements of an FLSA overtime claim.  The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1); see also Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098.  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 206(a).

Plaintiff alleges in the Complaint that he was an employee of the defendants who were engaged in commerce and/or in the production of goods for commerce, as defined by the FLSA. (Compl. ¶¶ 81, 82, 84).  It follows, therefore, that for purposes of this default, he qualifies as an "employee" under the FLSA.  Additionally, the Court does not find any basis for exempting the employment relationship at issue from the FLSA's provisions.  See 29 U.S.C. § 213(a) (setting forth the exemptions).  The Court therefore concludes that, at least for purposes of these default

judgment motions, plaintiff has adequately pleaded the third and fourth elements of an FLSA overtime claim.

Thus, because this is a default, the Court accepts plaintiff's uncontested allegations as true, and respectfully recommends that plaintiff be deemed to have sufficiently set forth the necessary elements to state a claim under the FLSA.

B.  NYLL Overtime Claims

Plaintiff also alleges that defendants violated the NYLL.  Like the FLSA, the NYLL establishes certain minimum wage rates and mirrors the FLSA's requirement that employees be compensated at an overtime rate of one-and-one-half times their regular hourly pay for time worked in excess of 40 hours in a week.  See 12 N.Y.C.R.R. § 142-2.2; see also 12 N.Y.C.R.R. § 146-3.5(b); see, e.g., Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003). In addition, under the NYLL, an employer is required to provide "one hour's pay at the basic minimum hourly wage rate" on days in which the employee works a spread of hours greater than 10 hours ("spread of hours" wages).  12 N.Y.C.R.R. § 142-2.4(a); see also 12 N.Y.C.R.R. § 146-1.6(a).

Plaintiff alleges that defendants violated the NYLL's overtime wage provisions by failing to pay him time and a half for hours worked over 40 in a workweek.  (See Compl., Count II). The elements of a NYLL overtime wage claim largely mirror those of an FLSA overtime wage claim.[11]

---

[11] The NYLL also provides that covered employees are entitled to an additional hour's pay at the basic minimum hourly wage rate for any day worked during which the "spread of hours"—i.e., "the interval between the beginning and end of an employee's workday," 12 N.Y.C.R.R. § 142-2.18—exceeds 10 hours, id. § 142-2.4. Although plaintiff's motion for default judgment seeks damages for unpaid spread of hours pay, plaintiff failed to allege this claim in his Complaint.  Thus, defendants were not put on notice of the claim and plaintiff may not recover damages in this category.  See Fed. R. Civ. P. 54(c).

To recover under the NYLL, the plaintiff must prove that he or she is an "employee" entitled to NYLL's protections and that the defendant is an "employer" as defined by the statute. See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407–09 (E.D.N.Y. 2009). The NYLL's definition of "employer" mirrors that of the FLSA, except that unlike the FLSA, the NYLL does not contain a minimum gross sales or interstate commerce requirement. See N.Y. Lab. L. § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer"); Singh v. Mowla, No. 19 CV 4687, 2022 WL 17820099, at *8, n.8 (E.D.N.Y. Sept. 30, 2022). Similarly, an "employee" is simply defined, in part, as "any individual employed or permitted to work by an employer in any occupation." N.Y. Lab. L. § 651(5).

In this case, plaintiff's allegations regarding his employment by defendants and their willful failure to pay overtime wages as proscribed by the New York Labor Law (Count II) suffices to demonstrate that he was an employee and was not properly paid in violation of the NYLL.

For the same reasons noted above with respect to plaintiff's FLSA claims, the Court concludes that (1) plaintiff has adequately alleged underpayment for overtime hours; (2) plaintiff fits within the definition of "employee"; and (3) defendants satisfy the definition of "employer" under the NYLL. Furthermore, there does not appear to be any exception to the definition of "employee" that applies in this case.

Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiff be deemed to have adequately alleged the elements necessary to state a claim under the New York Labor Law.

C.  NYLL Wage Statement and Notice Claims

Plaintiff has also alleged that defendants failed to provide him with the proper wage

notice at the time of hire and never provided proper wage statements or paystubs, in violation of

the NYLL.

Under the NYLL's notice and wage statement provisions—known collectively as the

"Wage Theft Prevention Act" or "WTPA"—employers are required to give each employee a

notice of their rate of pay at the time of hiring and a wage statement listing specific information

with each paycheck.  N.Y. Lab. L. § 195(1)(a), (3).  The notice must contain the rate or rates of

pay, whether the employee was to be paid by the hour, shift, day, or week, any allowances

claimed as part of the minimum wage, the regular pay day, the name of the employer, the

physical address of the employer's main office, and the employer's telephone number in both

English and the employee's primary language, if different from English.  Id. § 195(1)(a).  The

wage statement must include "the dates of work covered by that payment of wages; name of

employee; name of employer; address and phone number of employer; rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

gross wages; deductions;" and certain allowances.  Id. § 195(3).

A plaintiff may recover $50 for each workday during which the employer failed to

provide the required notice, not to exceed $5,000.  Id. § 198(1-b); see also Cabrera v. 1560 Chirp

Corp., No. 15 CV 8194, 2017 WL 1289349, at *7 (S.D.N.Y. Mar. 6, 2017) (describing the

WTPA's amendments to NYLL § 198(1-b)).  If an employer fails to provide an employee with a

pay stub, or with a pay stub containing the necessary wage statement, the employee may recover

$250 for each workday for which the employer failed to provide the statement, up to a total of

$5,000.  Id. § 198(1-d); see also Cabrera v. 1560 Chirp Corp., 2017 WL 1289349, at *6

(describing the WTPA's amendments to NYLL § 198(1-d)).

16

Recently, the Supreme Court explained in <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 426 (2021), that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  The Supreme Court clarified that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."  <u>Id.</u> at 427.  Courts in this Circuit, applying <u>TransUnion LLC v. Ramirez</u> to the wage statement and wage notice provisions of the NYLL, have since required plaintiffs to identify the harm caused to them by these violations—*i.e.*, to allege and ultimately prove that they suffered a specific injury as a result of defendants' noncompliance with the notice and wage statement provisions—and have concluded that a statutory violation alone is insufficient.  <u>Compare</u> <u>Stih v. Rockaway Farmers Market, Inc.</u>, No. 22 CV 3228, 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (finding plaintiff pleaded a sufficient injury flowing from defendants' alleged violations of the NYLL wage statement and notice provisions where plaintiff alleged that the noncompliance "caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment"), <u>with</u> <u>Francisco v. NY Tex. Care, Inc.</u>, No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (declining to certify a class action based on the defendants' alleged improper wage statement and notice policies because the plaintiff did not demonstrate, either in the pleadings or the record, a tangible injury or close parallel to a traditional cause of action sufficient to establish standing to bring those claims).[12]

---

[12] <u>See also</u> <u>Ramirez v. Urion Constr. LLC</u>, No. 22 CV 3342, 2023 WL 3570347, at *5 (S.D.N.Y. Apr. 28, 2023) (declining to award statutory damages and dismissing NYLL wage statement and notice claims on motion for default judgment due to lack of standing for failing to allege a concrete, fairly traceable injury), <u>report and recommendation adopted</u>, 2023 WL 3570639 (S.D.N.Y. May 19, 2023); <u>Belliard v. Tarnovsky</u>, No. 20 CV 1055, 2023 WL 3004963, at *6 (S.D.N.Y. Mar. 6, 2023) (declining to award a plaintiff statutory damages under the NYLL despite defendant's default because plaintiff "merely state[d] that he was not provided the new hire notice or wage statements" and failed to "assert any other facts describing the injury in fact caused by not receiving these

Just last week, the Second Circuit issued a decision in <u>Guthrie v. Rainbow Fencing Inc.</u>, No. 23-350, 2024 WL 3997427, at *11 (2d Cir. Aug. 30, 2024), confirming that in order to bring a claim under Section 195 of the NYLL, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm."

In the instant case, plaintiff merely alleged that he was not provided with the requisite notice and wage statements. He has not alleged any specific harm which flowed from defendants' noncompliance with the NYLL provisions, and therefore has not demonstrated his standing to bring these claims. In the absence of allegations that, if true, would establish such standing, the Court cannot conclude that plaintiff has adequately pleaded his wage statement and notice claims. During an inquest hearing on July 26, 2024, the Court informed plaintiff of the deficiencies in his wage statement and notice allegations, and he opted not to amend his Complaint to include sufficient allegations. (<u>See</u> ECF No. 93). Accordingly, the Court respectfully recommends that the district court deny the Motions with respect to those claims.

III.    <u>Default Determination</u>

Having considered the adequacy of the pleadings, the Court now addresses whether defendants in fact defaulted such that default judgment may be properly entered against them.

Here, it is beyond dispute that defendants are in default. Apart from defendants Latino Regal and Cisneros, none of the other defendants appeared in this action and all failed to answer or respond to the Complaint. Although defendants Latino Regal and Cisneros initially appeared, on April 11, 2024, defendants' counsel informed the Court that he had not been in communication with his clients since late 2022 and he believed defendant Cisneros had left the

---

documents"), <u>report and recommendation adopted</u>, 2023 WL 3304723 (S.D.N.Y. May 8, 2023); <u>Neor v. Acacia Network, Inc.</u>, No. 22 CV 4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing a complaint's claims under the NYLL wage statement and notice provisions for lack of standing where the complaint did not "allege any harm stemming from a lack of accurate wage notices or statements").

country.  (ECF No. 78; ECF No. 81-1 ¶ 5).  Counsel moved to withdraw on April 18, 2024 (see ECF No. 81), and Certificates of Default were entered on May 17, 2024 after defendants failed to obtain new counsel or notify the Court of the individual defendant's intention to proceed pro se. (ECF Nos. 83, 84).  These defendants have not appeared in this action since that time and thus are also in default.

The failure by the corporate defendants to obtain counsel in this case constitutes a failure to defend because corporations cannot proceed in federal court pro se.  See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).  Moreover, despite an explicit order from the district court warning that a Certificate of Default would be entered if the defendants failed to obtain new counsel or otherwise contact the court (ECF No. 79), defendants Latino Regal and Cisneros failed to comply with the order.  They also failed to respond to plaintiffs' request that default be entered.  (ECF No. 82); see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[defendant's] default is crystal clear – it does not even oppose this motion").

Here, defendants' failure to comply with the district court's order to appear in this action or respond to plaintiffs' papers requesting default warrants the entry of a default judgment in this matter.  Additionally, the amount of money involved in this case is not significant, unlike a case in which there are potentially millions of dollars involved.  See id. (entering default but giving defendant 20 days to set aside the default because plaintiff's damages request ran well into the millions of dollars).

Given the numerous opportunities afforded to defendants, and their apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay further.

IV.    Joint and Several Liability

Plaintiff brings FLSA and NYLL claims against both the corporate defendants – Latino Regal, Hornado, Romanticos, El Diamante, and Guadalajara – and against the individual defendants – Zambrano, Brito, Dutan, Carrillo, Rios, and Cisneros.  "Under the doctrine of joint and several liability, when two (2) or more defendants act together to cause an injury, each defendant is liable to the victim for the total damages."  Ainbinder v. Money Ctr. Fin. Grp., Inc., No. 10 CV 5270, 2014 WL 1220630, at *3 (E.D.N.Y. Mar. 24, 2014) (citing Zapico v. Bucyrus-Erie Co., 579 F.2d 714, 718 (2d Cir. 1978); Newman v. Mor, No. 08 CV 658, 2009 WL 890552, at *8 (E.D.N.Y. Mar. 31, 2009)).  Individuals may be held jointly and severally liable under the FLSA and the NYLL if they meet each statute's definition of an employer.  Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011).  As noted supra, accepting the plaintiff's uncontested allegations as true, the Court finds that plaintiff has sufficiently pleaded that both the corporate and individual defendants are employers within the definition provided by each statute.

In sum, the Court finds that the plaintiff has adequately pleaded his FLSA overtime claims, his NYLL overtime claims, but not his NYLL wage statement and notice claims, the defendants have in fact defaulted, and that the amount of money at issue in this case does not weigh against entering a default judgment. Accordingly, it is respectfully recommended that default judgment be entered against all the named defendants on plaintiff's overtime claims

under both the FLSA and NYLL, and that all defendants be held jointly and severally liable for damages.

DAMAGES

Having found that plaintiff is entitled to default judgment as to at least some of his claims, the Court now considers his request for damages.[13]  Plaintiff calculates that, in total, he is entitled to an award of $149,716.22 in unpaid overtime wages, liquidated damages, pre- and post-judgment interest, reasonable attorney's fees, costs, and expenses.  (See Dam. Chart; Compl. at 29).

I.    Legal Standard

Once the Court determines that default judgment should enter, the plaintiff must still establish his entitlement to the damages sought.  See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) (holding that "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation"); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded").  Unlike with the question of liability, a defaulting defendant is not deemed to have admitted all well-pleaded allegations concerning damages.  See Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at *3.  Thus, the plaintiff must still prove damages in an evidentiary proceeding at which the defendants have the opportunity to

---

[13] Since the Court concludes that plaintiff has not adequately pleaded spread of hours claims or stated an injury in connection with his WTPA claims, and plaintiff has removed references to damages for those claims in plaintiff's Latino Regal Corp.[,] Et Al. Calculations for Fernan Y. Jaramillo, filed on August 9, 2024 (ECF No. 93-3) ("Dam. Chart"), the Court does not consider his request for damages with respect to those two claims.  (See discussion supra, at 16-18).

contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, the court is permitted to "conduct hearings" or make referrals as necessary.  Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  United States v. Richardson, No. 17 CV 2982, 2018 WL 4138934, at *3 (E.D.N.Y. Feb. 13, 2018) (quoting Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989)), report and recommendation adopted, 2018 WL 4119518 (E.D.N.Y. Aug. 29, 2018).  In this case, an inquest hearing was held on July 26, 2024 before the undersigned, at which plaintiff appeared but defendants did not.

II.     Damages Requested by Plaintiff

  A.  Overtime Pay Under the FLSA and the NYLL

Plaintiff seeks overtime pay pursuant to both the FLSA and the NYLL.  (See Compl., Counts I and II).  Although plaintiff has established that he was not paid the proper overtime wages under both the FLSA and the NYLL, plaintiffs "are not entitled to recover twice for the same injury."  Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 5637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015), report and recommendation adopted as modified, No. 12 CV 5637, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015) (internal quotation marks and citations omitted); Llolla v. Karen Gardens Apartment Corp., No. 12 CV 1356, 2014 WL 1310311, at *11 (E.D.N.Y. Mar. 10, 2014), report and recommendation adopted as modified, No. 12 CV 1356, 2014 WL 1311773 (E.D.N.Y. Mar. 28, 2014).  See also Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 CV 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010)

(holding that "[a]lthough plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor law, they may not recover twice").  Having established wage violations under both laws, plaintiffs "may recover under the statute which provides the greatest amount of damages."  Charvac v. M & T Project Managers of New York, Inc., 2015 WL 5475531, at *4 (quoting Jiao v. Shi Ya Chen, No. 03 CV 165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007) (citation omitted)).

Accordingly, since plaintiff has prevailed under both state and federal law, and because the Federal minimum wage rate was $7.25 per hour, 29 U.S.C. §206(a)(1), while the minimum wage rate under New York was $13.00 an hour, 12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(*a*), resulting in a higher overtime rate than the federal overtime wage rate, the Court respectfully recommends that plaintiff be awarded unpaid overtime wages from defendants based on the NYLL.

Plaintiff asserts that although he worked six days, a week from 8:00 p.m. to 4:30 p.m. for a total of 51 hours, from March 1, 2018 until March 31, 2018,  he was paid a flat rate of $660.00 per week.  (Jaramillo Aff. ¶ 3, 5).  Thereafter, from April 1, 2018 until December 2, 2018, Mr. Jaramillo worked seven days a week, from 2:00 p.m. until 10:00 p.m. and then from 3:00 a.m. until 7:00 a.m. for a total of 84 hours per week.  (Id. ¶ 6).   During this second period of time, he was paid a flat weekly salary of $990.00.  (Id. ¶ 8).  Based on the allegations in the Complaint and confirmed by Mr. Jaramillo in his Affirmation, defendants failed to pay him overtime at the rate of one-and-a-half times his regular rate of pay, as required under the law.  (Id.)

In support of his damages calculations, plaintiff has submitted a chart detailing the hours worked, total pay received, number of unpaid overtime hours and the total amount of unpaid overtime owed.  (See Dam. Chart).  Plaintiff calculates the total amount of unpaid overtime owed with reference to the New York Hospitality Wage Order, see id.; 12 N.Y.C.R.R. § 146-1.1(a)

(providing that "every employer in the hospitality industry must pay to each employee . . . at least the rates provided in this Part), which applies because plaintiff was employed as an inventory clerk in restaurants owned and operated by defendants.  See 12 N.Y.C.R.R. § 146-3.1(a), (b) (defining "hospitality industry" to include a restaurant, which is "any eating or drinking place that prepares and offers food or beverage for human consumption . . . on any of its premises . . . to the public, to employees, or to members or guests of members").

The New York Hospitality Wage Order dictates that if an employer does not pay an employee an hourly rate, "the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5(b).  The Court will then use that regular rate to assess the amount of overtime pay owed.  See 29 U.S.C. § 207(a) (providing that overtime compensation for hours worked in excess of 40 in a week should be calculated at a rate not less than one- and one-half times the employee's regular rate of pay or one- and one-half times the minimum wage, whichever is greater).  See also 12 N.Y.C.R.R. § 146-1.4 (providing that overtime compensation for hours worked in excess of 40 hours in one workweek should be calculated at a wage rate of one- and one-half times the employee's regular rate).

In calculating the overtime amount owed for the first period of plaintiff's employment, the chart sets forth the number of weeks covered by the period from March 1, 2018 to March 31, 2018 as 4.29 weeks, for which plaintiff was paid a flat rate of $660 per week.  (Jaramillo Aff. ¶¶ 3, 5; Dam. Chart).  During this time, plaintiff claims that he worked 51 hours per week, with a regular rate of $16.50 per hour.  (Compl. ¶¶ 82, 83; Dam. Chart).  His applicable overtime rate should then be $24.75, and if he worked 11 hours of overtime a week (51 hours – 40 hours), he

should have received overtime pay of $272.25 per week or $1,089 for the first four full weeks of March 2018, plus an additional $39.48 per day for the remaining two days[14] of the month for a total overtime amount owed of $1,167.95.

For the second period of his employment, from April 1, 2018 to December 2, 2018, plaintiff worked twelve hours a day, seven days a week, for a total of 84 hours a week. (Jaramillo Aff. ¶¶ 6, 8).  He was paid a flat rate of $990 per week (id.), or the equivalent of $24.75 per hour.  Since his overtime rate would be $37.13, and he worked 44 hours of overtime a week (84 hours – 40 hours), his overtime pay for this second period of 35 weeks should have been $1,633.72 per week or $57,180.20 in total.

Accordingly, based on the information provided in plaintiff Jaramillo's Affirmation, which has not been challenged by defendants given their default, the Court respectfully recommends that plaintiff be awarded $58,348.15 representing  unpaid overtime wages.

### 1)  Liquidated Damages Under the NYLL

Plaintiff also seeks liquidated damages for the underpayment of his wages pursuant to the NYLL.  (Bae Decl. 1[15] ¶ 36; Bae Decl. 2 ¶ 28).[16]

The FLSA and NYLL provide for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments. 29 U.S.C. § 216(b); N.Y. Lab. L. §§ 198(1-a) and 663(1).  Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL only if the underpayment was found to be willful.  N.Y. Lab. L. § 663(1) (1967).  However, an amendment to the NYLL, effective November 24, 2009,

---

[14] Based on the Court's review of plaintiff's damages calculations, it appears that they seek damages for two additional days beyond the 4 full weeks in March 2018.  (See Dam. Chart (calculating interest for the first period using 4.29 weeks)).  The Court has thus calculated plaintiff's overtime based on that assumption.

[15] Citations to "Bae Decl. 1" refer to the Declaration of Yongjin Bae in Support of Motion for Default Judgment, filed February 12, 2024 (ECF No. 67), as against the defaulting defendants.

[16] Citations to "Bae Decl. 2" refer to the Declaration of Yongjin Bae in Support of Motion for Default Judgment, filed June 17, 2024 (ECF No. 86-2), as against defendants Latino Regal and Cisneros.

"incorporated the federal standard" and shifted the burden of proving good faith to the employer. Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  Under both statutes, the employer now bears the burden of proving good faith and reasonableness.

Under the NYLL's liquidated damages provision, "courts have not substantively distinguished the federal standard from the current state standard of good faith." Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing He v. Home on 8th Corp., No. 09 CV 5630, 2014 WL 3974670, at *7 n. 19 (S.D.N.Y. Aug. 13, 2014)); Eschmann v. White Plains Crane Serv., Inc., No. 11 CV 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014)). Accordingly, the employer's burden of proving good faith "is a difficult one, with double damages being the norm and single damages the exception." Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999), and awarding 100% liquidated damages under the FLSA standard).

Since the defendants have chosen not to appear in this action and have not established that they had a good faith basis to believe that their underpayment of wages was in compliance with the NYLL or the FLSA, the Court respectfully recommends that plaintiff be awarded liquidated damages in an amount equal to the amount of unpaid overtime wages under the NYLL.

Accordingly, the Court respectfully recommends that plaintiff be awarded liquidated damages in the amount of $58,348.15, which is equal to the amount of unpaid overtime wages owed.

2) Pre- and Post-Judgment Interest

Plaintiff also seeks an award of pre-judgment interest calculated at the rate of 9% per annum on the overtime wages he was entitled to receive but was not paid.  (Bae Decl. 1 ¶ 36; Bae Decl. 2 ¶ 29).  See N.Y.C.P.L.R. § 5004.

Pre-judgment interest is not available under the FLSA because the federal statute does not allow an employee to recover "prejudgment interest on any portion of their recovery for which they have been awarded federal liquidated damages," since liquidated damages under the FLSA "are considered compensatory in nature and thus serve as a form of pre-judgment interest." Yuquilema v. Manhattan's Hero Corp., No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (citations and quotation marks omitted), report and recommendation adopted, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); Yu G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008).

However, the Second Circuit has held that, as liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).  In this case, since the Court did not award plaintiff damages on his FLSA claims, there is no impediment to awarding liquidated damages and pre-judgment interest on plaintiff's NYLL claims.  However, pre-judgment interest is available only on a plaintiff's actual damages, not on liquidated damages.  See Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017).

In determining pre-judgment interest, "Courts have discretion in choosing a reasonable date from which to calculate" it.  Ladino v. Cordova, No. 21 CV 2449, 2024 WL 968898 at *4 (E.D.N.Y. Feb. 14, 2024), report and recommendation adopted, 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024).  In this district, courts most often select a "median date between the earliest

ascertainable date the cause of the action existed and the date the action was filed" from which to calculate pre-judgment interest.  Id.  (quoting Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012)).

The recommended unpaid overtime wage recovery available under NYLL is $58,348.15. The beginning of plaintiff's claim period is March 1, 2018.  (Jaramillo Aff. ¶ 3).  The Complaint was filed on May 23, 2019.  There are 448 days between these dates.  Half of 448 is 224, and 224 days from March 1, 2018 is October 11, 2018.[17]  The total amount, $58,348.15, multiplied by a rate of nine percent annually results in approximately $5,251.33 per year in interest, or $14.38 per day based on 365 days per calendar year.

Accordingly, the Court recommends that pre-judgment interest be awarded by the Clerk of Court in a daily amount of $14.38 from October 11, 2018, until the date when the judgment is entered.

## III.    Attorney's Fees and Costs

Plaintiff also seeks an award of $58,710.50[18] in attorney's fees, representing 211.90 hours on this matter, and $1,123.63 in costs incurred in connection with this action, pursuant to the FLSA, 29 U.S.C. § 216(b), and N.Y. Lab. L. §§ 198(4), 663(1).  (Bae Supp. Aff. ¶¶ 2, 30).

### A.  Prevailing Party

---

[17] Plaintiff requests that the Court select a midpoint date of March 16, 2018 for the March 1, 2018 to March 31, 2018 period, and a midpoint date of August 1, 2018 for the April 1, 2018 to December 2, 2018 period.  (See Dam. Chart).  However, the Court uses the same process to select a midpoint as other courts in this district.  Based on this process, the Court finds the midpoint between the beginning of plaintiff's claim period and the date on which the Complaint was filed to be October 11, 2018.

[18] The Supplemental Affidavit of Yongjin Bae in Support of Motion for Default Judgment, filed August 9, 2024 (ECF No. 93-1) ("Bae Supp. Aff."), states that plaintiff is seeking $58,710.50 in attorney's fees, but the billing records reflect a lesser amount, likely due to the fact that plaintiff requests the $400 court filing fee twice, as a cost and as a fee for Lorena Duarte, and the records reflect a $30 reduction in the amount requested for attorney Paul Mendez.  (See ECF No. 93-2 at 2) ("Billing Recs.").

The FLSA is a fee shifting statute and the Court "must" award a reasonable attorney's fee to a prevailing party in an FLSA action. Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) (quoting 29 U.S.C. § 216(b) (providing that the court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action") (emphasis supplied)); see also Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013). Similarly, the NYLL provides for an award of reasonable attorney's fees when the employee prevails on a wage claim. N.Y. Lab. L. § 663(1). Section 663 provides that successful employees are entitled to "recover in a civil action the amount of any such underpayments, together with costs[,] all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules . . . ." Id.

Plaintiffs are prevailing parties under the FLSA and the NYLL "'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d at 474 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see Koster v. Perales, 903 F.2d 131, 134 (2d Cir. 1990) (holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint").

Here, because defendants have defaulted, plaintiff is a prevailing party and therefore should receive an award of reasonable attorney's fees and costs.

B. Calculation of Reasonable Attorney's Fees

    1) Legal Standard

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v.

Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee."  Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report and recommendation adopted by 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013), report and recommendation adopted by 2013 WL 1622713 (Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'"  Millea v. Metro-North R.R. Co., 658 F.3d at 167 (quoting Perdue v. Kenny A., 130 S. Ct. at 1673).  Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  Id. (quoting Perdue v. Kenny A., 130 S. Ct. at 1673); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2.  In other words, "a

30

court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." Id.  As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."  2012 WL 676350, at *5, n.6.

    2)  Analysis

In this case, plaintiff was represented by the firm of Hang & Associates PLLC ("the Firm"), which is located at 136-20 38th Avenue, Suite 10G, Flushing, New York 11354.  In accordance with New York State Association for Retarded Children, Inc. v. Carey, the Firm submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney, law clerk, or paralegal, and a description of services performed.  711 F.2d 1136, 1148 (2d Cir. 1983).  (See Billing Recs.)  From a review of the Firm's billing records, it appears that 19 different individuals worked on this case.  (See Billing Recs.)

    a.  Hourly Rates

In order to calculate the lodestar, the Court must first determine a reasonable hourly rate for the legal services performed.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate . . ." Id. at 186 (quoting Hensley v. Eckerhart, 461 U.S. at 433 (1983)). Additionally, the

Second Circuit has adopted the following factors, inter alia, to guide the inquiry as to what constitutes a reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186 n.3 (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).  A number of recent cases have considered these factors when awarding attorneys' fees.  See Lisnitzer v. Shah, No. 11 CV 4641, 2022 WL 3931388, at *2 (E.D.N.Y. July 6, 2022), report and recommendation adopted sub nom. Lisnitzer v. Zucker, 2022 WL 3914964 (E.D.N.Y. Aug. 31, 2022), amended by 2023 WL 2020963 (E.D.N.Y. Feb. 15, 2023) (adjusting award by 62 cents); see also Smith v. City of New York, No. 19 CV 6198, 2022 WL 939711, at *4 n.3 (E.D.N.Y. Mar. 28, 2022).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . ., and other returns (such as reputation, etc.) the attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184.

In determining the appropriate rate to be charged, the Second Circuit has indicated that courts may consider evidence of prevailing rates for similar services beyond the fee application itself.  See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989).  In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'") (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'"  Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).

Plaintiff seeks fees for services performed by 19 current and former associates, paralegals, and law clerks of the Firm.  These include the following:

Diana Seo, Esq., is an associate who has been practicing employment and labor law since joining the Firm in 2019.  She received her J.D. in 2014 and is licensed to practice in New York and Arizona.  The Firm seeks $300 per hour for Ms. Seo's work.  (Bae Supp. Aff. ¶ 11).

Ge Qu, Esq., an associate who received his J.D. from Fordham University School of Law in 2015, and an LLM from Duke University, has substantial FLSA experience. The Firm seeks $325 per hour for Mr. Qu's work. (Id. ¶ 15).

Guofeng Li, Esq., is an associate specializing in wage and hour actions under the FLSA and NYLL, who graduated from Touro Law Center in 2021 and holds admissions to multiple State bars, including the State of New York. The Firm seeks $325 per hour for Li's work. (Id. ¶ 14).

Keli Liu, Esq., is a former senior associate of the Firm, who received her law degree from Syracuse University in 2013 and started practicing with the Firm in late 2015, focusing exclusively on employment and labor litigation. The Firm seeks $325 per hour for Ms. Liu's work. (Id. ¶ 7).

Lorena Duarte, Esq., another former associate, received her J.D. from the St. Thomas University School of Law in Miami in 2015, and billed at an hourly rate of $300 per hour until she left the Firm. (Id. ¶ 9).

Oscar Alvarado, Esq., is an associate at the Firm who received his law degree from the New York University School of Law in 2018. The Firm seeks $300 per hour for his work. (Id. ¶ 23).

Paul Mendez, Esq., a former associate, received his J.D. from Albany Law School and was admitted to practice in the State of New York in 2014. The Firm seeks $300 per hour for his work. (Id. ¶ 24).

Qinyu Fan, Esq., has been an associate at the Firm since 2019, and practices wage and hour litigation almost exclusively. The Firm seeks $300 per hour for her work. (Id. ¶ 25).

Shan Zhu, Esq., has also been an associate since 2019 and received her J.D. and an LLM degree from Case Western Reserve University School of Law.  The Firm seeks $300 per hour for her work.  (Id. ¶ 8).

Yongjin Bae, Esq., joined the Firm as an associate in 2021.  He received his J.D. from University of Minnesota Law School in 2017 and was admitted to the State bars of New York and New Jersey.  The Firm seeks $325 per hour for his work.  (Id. ¶ 18).

Yuezhu Liu, Esq., another associate at the Firm, graduated from the University of Maryland Francis King Carey School of Law, and has practiced wage and hour law for over three years.  The Firm seeks $300 or $325 per hour for her work.  (Id. ¶¶ 2, 13).

Zindzi Corbett, Esq., one of two Spanish-speaking attorneys at the Firm (the other being Lorena Duarte), received her law degree from Norman Manley Law School in Jamaica in 2015 and was admitted to practice in the State of New York in 2019.  The Firm seeks $300 per hour for her work.  (Id. ¶ 10).

Ziyi Gao, Esq., is an associate who joined the Firm in 2021 shortly after she received her law degree from Touro Law Center. She was admitted to the New York State bar in 2022.  The Firm seeks $325 per hour for her work.  (Id. ¶ 16).[19]

In addition to the associates, 2 law clerks, Ge Yan and Leticia Ochoa, and 4 paralegals, Karla Dussan, Leslie Cabello, Maritza Yanes, and Yu Zhang, also worked on the matter.  Per

---

[19] After this initial introduction of each attorney, the Court refers to each attorney using their surname and the prefix matching the pronouns listed in Mr. Bae's Supplemental Affidavit, with the exception of Guofeng Li, whose pronouns are not listed, and Keli Liu and Yuezhu Liu, who share a common surname.  (See Bae. Supp. Aff.) The Court refers to these attorneys as "Guofeng Li," "Ms. Keli Liu," and "Ms. Yuezhu Liu."

hour, the law clerks both billed $150, and the paralegals billed $200, $175, $175, and $200, respectively.  (Id. ¶¶ 12, 17, 19-22).

At first glance, 13 attorneys and 6 support personnel billing time on a wage and hour case, involving one plaintiff seems excessive.  While that number may appear disproportionate to the work required to pursue a simple default judgment, this was not the typical FLSA default case because two defendants appeared and engaged in litigation.

As noted previously, plaintiff filed the Complaint on May 23, 2019, (ECF No. 1), but was not able to move for default judgment against all defendants until June 17, 2024, because defendants Latino Regal and Cisneros initially appeared to litigate the case.  See discussion supra, at 2-3.  After properly serving all defendants, plaintiff filed his first Motion for Default Judgment on March 23, 2021 against all defendants except for Latino Regal and Cisneros.  (ECF No. 37).  On April 5, 2021, the district court stated that it would not consider the Motion until the claims against the remaining defendants were resolved.  (Electronic Order, dated April 5, 2021).  On February 12, 2024, plaintiff filed a renewed, Amended Motion for Default Judgment against the defaulting defendants.  (ECF No. 66).

Defendants Latino Regal and Cisneros proceeded to litigate the action, engaging in discovery, including depositions, filing a Motion for Summary Judgment, and beginning pretrial preparations.  (See, e.g., ECF Nos. 23, 40, 42).  In April 2024, defendants' counsel sought to withdraw from further representation.  (ECF No. 78).  The district court issued an order on April 11, 2024, directing defendants' counsel to file their motion by April 18, 2024, and ordering defendant Cisneros to indicate by May 2, 2024, if he intended to proceed to represent himself *pro se*, and/or whether he would retain new counsel for himself and the corporate entity.  (ECF No. 79).  On May 7, 2024, when defendants Cisneros and Latino Royal failed to respond to the

district court's order, the court granted defense counsel's Motion to Withdraw and directed the entry of default against Cisneros and Latino Regal, based on their failure to provide the information directed by the court in its April 11, 2024 Order. (Electronic Order, May 7, 2024). Following the entry of default, plaintiff thereafter filed his second Motion for Default Judgment on June 17, 2024. (ECF No. 86).

In total, approximately five years and one month elapsed between the filing of the Complaint and the filing of plaintiff's second Motion for default judgment. Although the billing records reflect that 13 attorneys, 4 paralegals, and 2 law clerks cycled through this case in that time – a number that at first glance appears excessive – a close review of the billing records suggests that at any given time over the course of this litigation, there were typically only 1-2 attorneys operating as primary counsel on the case with the support of 1 primary paralegal. Starting with 2019, the following attorneys billed time on the case:

- Ms. Duarte billed in February and May 2019.
- Ms. Keli Liu billed in June, September, October, and November 2019.
- Mr. Mendez billed once in July 2019.
- Ms. Corbett billed in November 2019.

(Billing Recs. at 2-4). Ms. Liu entered a Notice of Appearance in June 2019 and operated as the primary attorney on the case until November 2019, when she left the Firm. (ECF Nos. 9, 25; Billing Recs. at 3-4). Ms. Corbett filed a Notice of Appearance shortly before the Court granted Liu's Motion to Withdraw. (ECF No. 24). After conducting the initial client intake and case research, Ms. Duarte drafted and filed the Complaint. (ECF No. 1; Billing Recs. at 2-3). Mr. Mendez saved documents on one occasion. (Billing Recs. at 3).

For the first few months of 2020, Ms. Corbett served as the primary attorney on the case, with Ms. Seo providing time-limited, discrete support with drafting plaintiff's first discovery

package.  (Id. at 4-5).  In March 2020, Ms. Corbett left the firm, and Ms. Zhu filed a Notice of

Appearance, serving as the primary attorney on the case from March 2020 to June 2022.[20]  (ECF

Nos. 26, 28; Billing Recs. at 5-14).

      During Ms. Zhu's time as the primary attorney, Ms. Yuezhu Liu, Ms. Fan, and Mr.

Alvarado billed for discrete tasks during brief periods in the case.  (Billing Recs. at 5-14).  Ms.

Zhu had one conversation with Ms. Liu regarding a deposition in January 2021 (id. at 7); Ms.

Fan notarized one document in September 2021 (id. at 12); and Mr. Alvarado filed a Notice of

Appearance (ECF No. 44), and held two client conversations in April and May of 2022. (Billing

Recs. at 14).  Ms. Fan and Mr. Alvarado did not bill for time outside of these instances.  (See

Billing Recs.)

      In June 2022, Ms. Liu filed a Notice of Appearance and began acting as a primary

attorney on the case.  (ECF No. 49; Billing Recs. at 14-15).  In September 2022, Guofeng Li

filed a Notice of Appearance, and collaborated with Ms. Liu to review defendants' Motion for

Summary Judgment, formulate a strategy for plaintiff's Opposition to the Motion, then draft and

file plaintiff's Opposition and supporting exhibits.  (ECF No. 52; Billing Recs. at 15-17).  On

September 9, 2022, Ms. Liu spoke with Mr. Qu about plaintiff's opposition strategy, but Mr. Qu

did not bill again until 2024.  (Billing Recs. at 16, 18).

      In 2023, Guofeng Li and Ms. Liu both monitored the case sporadically but billed very

little time while  defendants' Motion for Summary Judgment was pending before the district

court.[21]  (Billing Recs. at 17; ECF Nos. 55, 60).  On January 22, 2024, Mr. Bae filed a Notice of

---

[20] While Ms. Zhu did not file a Motion to Withdraw with the Court until September 15, 2022 (ECF No. 54),
she did not bill any time on the case after June 17, 2022.  (See Billing Recs. at 14).

[21] On September 1, 2023, Guofeng Li filed a Motion to Withdraw with the Court because Li left Hang &
Associates PLLC.  (ECF No. 59).

Appearance, and he has served as the primary attorney in the case since entering his appearance. (Billing Recs. at 17-24).  Mr. Qu billed time from February through May 2024, but his involvement was limited to sporadic strategy discussions with Mr. Bae and notarizing a document on one occasion.  (Id. at 18-22, 24).

Although the Court recognizes the necessity of having this many people assigned to the matter, based on the Court's review of plaintiff's submissions, the Court finds that the rates requested for the Firm's associates, ranging between $300 and $325 an hour, and the rates requested for paralegal/law clerk time, are high compared to rates awarded in other similar cases in this district.  In FLSA cases, courts in this district have recently awarded a range of rates between "$300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff."  Martinez v. New 168 Supermarket LLC, No. 19 CV 4526, 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020), report and recommendation adopted, No. 19 CV 4526, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020) (collecting cases).  But cf., Shin v. Party Well Rest & Oriental Bakery, Inc., No. 20 CV 1319, 2023 WL 8701337, at *4 (E.D.N.Y. Dec. 15, 2023), report and recommendation adopted, No. 20-CV-1319(CBA)(TAM), 2024 WL 1327420 (E.D.N.Y. Mar. 28, 2024) (finding that in FLSA cases, recent EDNY decisions approved hourly rates of "$200-$300 for senior associates[] and $100 [to] $200 for junior associates") (collecting cases).

Courts award hourly rates based on the years of experience that the attorney had when they billed the time.  See, e.g., Sanchez v. 156-40 Grill LLC, No. 15 CV 5081, 2024 WL 2855719 (E.D.N.Y. June 6, 2024) (reducing associate's requested hourly rate from $350 to $150 because all the work was billed within first three years of practice and no special circumstances warranted "award[ing] a rate typically awarded to more senior associates with more than four

39

years' experience"); Rodriguez v. Mi Esquina Deli Corp., No. 21 CV 760, 2023 WL 6442939

(E.D.N.Y. Oct. 3, 2023) (setting hourly rate of $250 for managing attorney with 7 years at firm

and rate of $175 for attorney who was a second year associate "while performing work on this

matter"). "The demarcation between junior and senior associates in this district is typically four

or more years." Jones v. Pawar Bros. Corp., No. 17 CV 3018, 2023 WL 6214213, at *8

(E.D.N.Y. Sept. 25, 2023), appeal withdrawn, No. 23 CV 7385, 2024 WL 1609743 (2d Cir. Mar.

18, 2024) (collecting cases). Even when using a range for associates' hourly rates, courts

typically reserve higher rates in those ranges for associates that have specialized expertise or

significant involvement in a case. See, e.g., id. at *9 (reducing two associates' hourly rates as

excessive where one had 4 years of experience but no prior FLSA or NYLL experience, and the

other had even fewer years of experience and no prior FLSA or NYLL experience).

    For paralegals and law clerks, an hourly rate of $120 sits at the "higher end of the rates

typically awarded in this district." Ahn v. Sun Cleaners Inc., No. 19 CV 5919, 2022 WL 586022,

at *11 (E.D.N.Y. Feb. 18, 2022) (reducing paralegal hourly rate to $70 at "lowest end of the scale

for paralegals" since plaintiff's counsel did not include credentials for the paralegal who billed

time). See also Martinez v. New 168 Supermarket LLC, 2020 WL 5260579, at *8 (noting that

legal support staff are typically awarded fees of "$70 to $100" per hour); Rudler v. Houslanger &

Assocs., PLLC, No. 18 CV 7068, 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (stating that

courts in this district typically award fees ranging from "$70 to $100 for paralegals in fee-

shifting cases"). But see, Guinea v. Garrido Food Corp., No. 19 CV 5860, 2020 WL 136643, at

*2 (E.D.N.Y. Jan. 13, 2020) (finding that an hourly rate of $125-$175 for paralegal time was

"reasonable and consistent with rates allowed in this district[,]" conceding the top rate was high

but that the "paralegal is a foreign certified lawyer who assisted with Spanish translation services for plaintiff").[22]

In reviewing the requested rates and applying recent caselaw on associate fee awards, the Court considered the years of experience each attorney had at the time of billing, the type of substantive work performed, and the total number of hours the attorney expended on the case. Based on careful review,[23] [24] the Court respectfully recommends the following rates: $300 for Ge Qu, Shan Zhu, and Yongjin Bae; $275 for Diana Seo, Keli Liu, and Lorena Duarte; $250 for Guofeng Li, Oscar Alvarado, Paul Mendez, and Yuezhu Liu; $225 for Zindzi Corbett; and $200 for Qinyu Fan and Ziyi Gao.

Given the current acceptable rates for paralegals and law clerks, the Court further respectfully recommends the following reduced rates: $100 for Leticia Ochoa and Maritza Yanes; and $85 for Ge Yan, Karla Dussan, Leslie Cabello, and Yu Zhang.[25]

---

[22] Although the work on this case spanned five years and one month, beginning in 2019, when rates may have been even lower, the Court recognizes that "attorney's fees, like other goods and services, increase in cost with inflation." Christian v. Metropolitan Speciality Lab's, Inc., No. 17 CV 4721, 2019 WL 3729458, at *10 (E.D.N.Y. Aug. 8, 2019) (internal quotations and citation omitted). As such, the Court has relied on more recent caselaw to determine the appropriate rates for plaintiff's counsel in this case.

[23] In recommending these rates, the Court also reviewed the nature of the tasks completed by the attorneys. The Court finds that the types of tasks performed by Ms. Seo, Ms. Duarte, and Ms. Keli Liu – despite their years of experience – did not warrant the higher hourly rates requested, particularly because both Ms. Duarte and Ms. Keli Liu performed administrative tasks that could have been completed by a more junior associate or a paralegal. The Court also found that Ms. Gao, Ms. Fan, Mr. Alvarado, and Mr. Mendez – irrespective of their years of experience – primarily billed time for administrative tasks, which warranted the recommended reduced rates. (See discussion infra, at 44-45).

[24] In reviewing the attorneys' years of experience, the Court found that Ms. Zhu's significant contributions to the case warranted a rate of $300 despite Ms. Zhu being less senior than other associates who billed time. With respect to Mr. Bae, despite his years of experience, the Court has concerns about the quality of the papers submitted in support of the Motion for Default Judgment and the numerous issues that resulted in the Court's initial recommendation to deny the Motion. Based on these considerations, the Court recommends a reduction in Mr. Bae's hourly rate to $300. The Court found that Mr. Qu's years of experience necessitated his recommended rate, despite the Court's concerns about the types of tasks he completed. The Court found that Guofeng Li and Ms. Yuezhu Liu had limited experience, approximately 1-2 years and 2-3 years, respectively, which warranted a lower rate. With respect to Ms. Corbett, the Court considered Ms. Corbett's limited years of legal experience – in addition to her completion of various administrative tasks – in recommending her reduced rate.

[25] The Court recommends rates on the higher end of the range for legal support staff for Ms. Ochoa and Ms. Yanes because they billed significant hours on the case, 8.20 hours and 30.71 hours, respectively (Bae. Supp. Aff. ¶

b. <u>Hours Billed</u>

Turning to the number of hours billed, the Firm's records reflect that the 13 attorneys, 2 law clerks, and 4 paralegals billed for over 211 hours of legal work performed in connection with this matter.  (<u>See</u> Billing Recs. at 1).

To determine the reasonableness of an attorney's fees request, "[t]he Court must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'"  <u>Maldonado v. La Nueva Rampa, Inc.</u>, No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994)), <u>report and recommendation adopted</u>, (S.D.N.Y. Aug. 9, 2012).  "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  <u>Id.</u> (quoting <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992)).  In this Circuit, judges are required to "'use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'"  <u>Cho v. Koam Med. Servs. P.C.</u>, 524 F. Supp. 2d 202, 208 (E.D.N.Y. Nov. 30, 2007) (quoting <u>Fox Indus., Inc. v. Gurovich</u>, No. 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).

In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours."  <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. at 433-35, 440); <u>see also</u> <u>Rotella v. Board of Educ.</u>, No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to

---

2), and provided meaningful support to attorneys by conducting legal research, drafting documents, and communicating in Spanish with the plaintiff.  <u>See, e.g.</u>, <u>Guinea v. Garrido Food Corp.</u>, 2020 WL 136643, at *2.  By contrast, Mr. Yan, Ms. Dussan, Ms. Cabello, and Mr. Zhang billed less than 2 hours each, and thus, it is recommended that their time be billed at a lower rate.  (Bae. Supp. Aff. ¶ 2).

fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); Perdue v. City Univ. of N.Y., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries, see, e.g., In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (reducing fees based on lack of specificity in description of work performed); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of work performed), rev'd & remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v. Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994); Nu-Life Constr. Corp. v. Board of Educ., 795 F. Supp. 602, 607-08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

For a simple default, generally, the "high-end amount of hours spent on eases [sic] in a similar procedural posture (i.e., a motion for default judgment immediately following the filing of a complaint) is no more than 55 hours total." Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341, at *14 (collecting cases from the Second Circuit in which courts approved the number

of hours spent on default judgment cases in similar "wage-and-hour cases" as requested if less than 55, and reduced the number of hours, if greater).

However, as noted supra, this case is somewhat unusual and similar to Astudillo et al v. Fusion Juice Bar, Inc., where the Court explained that the case was not "a standard default because defendants had initially appeared and the parties had engaged in preliminary case and settlement conversations for months."  No. 19 CV 2590, 2023 WL 3802754 (E.D.N.Y. Mar. 23, 2023) at *18, report and recommendation adopted, No. 19 CV 2590, 2023 WL 5436131 (E.D.N.Y. Aug. 23, 2023).  In Astudillo, the Court also found that plaintiffs' attorney did not bill "excessive amounts of time" since the attorney was completing:

> necessary tasks for the case, particularly given the fact that defendants actually prolonged the matter by filing an Answer and then by failing to maintain contact with their attorney, resulting in the adjournment of several conferences and delays while counsel was attempting to contact the clients and then while defendants were given time to find new counsel, only in the end to default.

Id.

Here, however, plaintiff's billing records contain several entries by attorneys, including but not limited to, Ms. Keli Liu, Ms. Corbett, Ms. Yuezhu Liu, and Mr. Bae, that are "spent on administrative or non-compensable work, including clerical tasks, such as electronic filing, scanning, organizing files, communicating with process servers, and printing documents." Tenecora v. Ba-kal Rest. Corp., No. 18 CV 7311, 2020 WL 8771256, at *30 (E.D.N.Y. Nov. 30, 2020) (collecting cases), report & recommendation adopted in part, 2021 WL 424364 (E.D.N.Y. Feb. 8, 2021); see Cruz v. JJ's Asian Fusion Inc., No. 20 CV 5120, 2022 WL 687097, at *11 (E.D.N.Y. Jan. 11, 2022) (reducing hours for partner by 50% where partner billed for reviewing court notices, filed affidavits, filed notices, and performed other ministerial tasks), report &

44

recommendation adopted, 2022 WL 577954 (E.D.N.Y. Feb. 25, 2022). There are multiple instances of attorneys billing time, for example, to mark court deadlines on the Firm's calendar, to notarize documents, to prepare and send mail, and to confirm all affidavits of service had been filed. (See, e.g., Billing Recs. at 3, 4, 13, 14, 19). These are administrative tasks that could have been completed by legal support staff.

Other entries are duplicative or redundant, including multiple attorneys preparing plaintiff's requests for production, interrogatories, and initial disclosures, as well as duplicate attorney entries for reviewing case files to draft various papers for filing. (See, e.g., id. at 4-5, 18, 19). See Pocius v. Sec. Auto Sales Inc., No. 16 CV 400, 2018 WL 3999649, at *5 (E.D.N.Y. July 6, 2018) (reducing attorney's fees by 30% where billing entries "include either duplicative or plainly excessive time"), report & recommendation adopted, 2018 WL 3998965 (E.D.N.Y. Aug. 20, 2018); Katzenberg v. Lazzari, No. 04 CV 5100, 2007 WL 2973586, at *7 (E.D.N.Y. Oct. 9, 2007) (reducing attorney's fees where duplicative and redundant time after court reviewed entries); Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 64 (E.D.N.Y. 2003) (reducing attorney's fees by 10% where "overlap of efforts" and the court noted that "greater economy of time might have been used").

Still other entries are vague in describing the tasks completed by attorneys and why those tasks were significant to the case. (See, e.g., Billing Recs. at 4, 5, 18, 19). See Levy v. Powell, No. CV 00 4499, 2005 WL 1719972, at *7 (E.D.N.Y. July 22, 2005) (describing examples of vague entries, including "'review misc. administrative papers,' 'review correspondence from client,' 'Note to [colleague],' or 'telephone conference with client'"). Except for travel time, which the Court addresses separately below, the Court respectfully recommends a 10% reduction to the total number of hours billed, rather than "reducing each specific entry to reflect

45

administrative tasks or cutting duplicative" and vague entries.  Lin v. Joe Japanese Buffet Rest. Inc., No. 17 CV 3435, 2022 WL 2718584, at *8 (E.D.N.Y. June 7, 2022), report and recommendation adopted, No. 17 CV 3435, 2022 WL 2716487 (E.D.N.Y. July 13, 2022); see also Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. at 64 (reducing award by 10% where redundant entries) (collecting cases); Levy v. Powell, 2005 WL 1719972, at *8 (reducing one attorney's award by 10% where hours duplicative of attorney's work).

As for travel time, one attorney, Ms. Corbett, charged her full hourly rate of $300 to bill 3.25 hours to commute to and from an initial conference with the Court on November 18, 2019, and 2.75 hours to travel to a status conference with the Court on January 7, 2020.  (Billing Recs. at 4).  She also billed 3.5 hours at her full hourly rate to "Attend Status Conference" on February 11, 2020.  (Id. at 5).  Given that status conferences with the Court rarely exceed half an hour, it appears Ms. Corbett billed 9 hours at her full rate for travel time.

Courts in this Circuit typically permit attorneys to recover travel time at "only 50 percent of the attorney's otherwise approved rate."  Ge Chun Wen v. Hair Party 24 Hours Inc., No. 15 CV 10186, 2021 WL 3375615, at *23 (S.D.N.Y. May 17, 2021), report & recommendation adopted sub nom. Wen v. Hair Party 24 Hours Inc., 2021 WL 2767152 (S.D.N.Y. July 2, 2021); see Caltenco v. G.H. Food Inc., No. 16 CV. 1705, 2021 WL 4481205, at *11 (E.D.N.Y. Sept. 30, 2021) (awarding half-rate for travel time); Center for Popular Democracy v. Board of Governors of Fed. Rsrv. Sys., No. 16 CV 5829, 2021 WL 4452202, at *14 (E.D.N.Y. Sept. 29, 2021) (noting that recalculation of travel time hours to 50% rendered objections to travel time hours moot); Tenecora v. Ba-kal Rest. Corp., 2020 WL 8771256, at *30 (E.D.N.Y. Nov. 30, 2020) (approving 50% reduction in fees for attorney travel time), report & recommendation adopted in part, 2021 WL 424364 (E.D.N.Y. Feb. 8, 2021).  Given the applicable caselaw, the Court respectfully

46

recommends, in addition to the 10% across the board reduction and the adjusted rates for attorney, paralegal, and law clerk time, that Ms. Corbett's travel time fee be reduced by 50% to account for the use of her full hourly rate.

The Court therefore respectfully recommends that plaintiff's attorney's fees be calculated using the recommended rates as set forth in the table below.

| Individual | Total Fees Requested | Hours Requested | Hourly Rate Requested | Hourly Rate Recommended | Fees at Recommended Rate |
|---|---|---|---|---|---|
| Diana Seo | $1,380.00 | 4.60 | $300 | $275 | $1,265.00 |
| Ge Qu | $390.00 | 1.20 | $325 | $300 | $360.00 |
| Guofeng Li | $8,190.00 | 25.20 | $325 | $250 | $6,300.00 |
| Keli Liu | $487.50 | 1.50 | $325 | $275 | $412.50 |
| Lorena Duarte | $2,310.00 | 7.70 | $300 | $275 | $2,117.50 |
| Oscar Alvarado | $570.00 | 1.90 | $300 | $250 | $475.00 |
| Paul Mendez | $60.00[26] | .20 | $300 | $250 | $50.00 |
| Qinyu Fan | $60.00 | .20 | $300 | $200 | $40.00 |
| Shan Zhu | $10,800.00 | 36.00 | $300 | $300 | $10,800.00 |
| Yongjin Bae | $15,437.50 | 47.50 | $325 | $300 | $14,250.00 |
| Yuezhu Liu | $4,962.50 | 15.26 | $325 | $250 | $3,815.00 |
| Zindzi Corbett | $6,150.00 | 11.50[27] | $300 | $225 | $2,587.50 |
| Ziyi Gao | $32.50 | .10 | $325 | $200 | $20.00 |

[26] Mr. Bae's Supplemental Affidavit indicates that plaintiff is seeking fees based on Mr. Mendez's full rate of $300, but the relevant entry in the billing records identifies Mr. Mendez's rate as $150. (Bae Supp. Aff. at ¶ 2; Billing Recs. at 3). Furthermore, Mr. Mendez completed a one-time administrative task.

[27] The Court has reduced this number from 20.50 hours to account for the 9 hours of travel time, which the Court will calculate separately.

| | | | | | |
|---|---|---|---|---|---|
| **TOTALS** | $50,830.00[28] | 200.40[29] | | | $42,492.50 |

Applying the Court's recommended 10% across-the-board reduction of the attorney's fees to account for vague and redundant entries and to account for work that could have been completed by more junior associates or paralegals, the Court respectfully recommends reducing the total for attorney time to $38,243.25.

The Court also respectfully recommends that Ms. Corbett's requested 9 hours of travel time be reduced by fifty percent, which means her travel fee should be $1,012.50.[30]  This adjustment brings the total for attorney time to $39,255.75.

Lastly, plaintiff's counsel requested fees for 44.05 hours of paralegal/law clerk time. Calculating the amount using the reduced hourly rates of $100 for Ms. Ochoa and Ms. Yanes, and $85 for Mr. Yan, Ms. Dussan, Ms. Cabello, and Mr. Zhang, the fee for paralegal/law clerk time should be $4,327.90.

Accordingly, based on the hourly rates recommended above, the hours billed on this matter, the recommended 10% across-the-board fee reduction, and the reduction in the rate charged for attorney travel time by 50%, the Court respectfully recommends that plaintiff be awarded $43,583.65 in attorney's fees.

C.  <u>Reasonable Costs</u>

---

[28] As noted by the Court at n.4, <u>supra</u>, Mr. Bae's Supplemental Affidavit includes a typographical error indicating that plaintiff seeks a total sum of $58,710.50 in attorney's fees.  (Bae Supp. Aff. ¶ 2).  In this table, the Court excludes paralegal/law clerk time and the $430 difference noted previously.

[29] The Court has reduced this number from 211.90 hours to account for the 9 hours of travel time billed by Ms. Corbett.

[30] The Court calculated this total by multiplying 9 hours * $112.50/hour.

Plaintiff also requests $1,123.63 in costs and disbursements, including $400 for filing fees,[31] $713.95 for deposition transcript costs, and $9.68 for mailing fees. (Billing Recs. at 25).

Based on a review of the record, the Court takes judicial notice of the filing fee and recommends that plaintiff be awarded $400 for the filing fee. See Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service of process, legal research, and postage; see also Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) (citing Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987) (explaining that "[i]dentifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable . . . and are often distinguished from nonrecoverable routine office overhead, which must be absorbed within the attorney's hourly rate"). However, with respect to the remaining costs, plaintiff has not provided any invoices or documentation evidencing the expenditure of these sums. Accordingly, the Court declines to recommend an award for these items and respectfully recommends that plaintiff be awarded $43,583.65 in attorney's fees, plus an additional $400 in costs, totaling $43,983.65.

## CONCLUSION

The Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted, and that plaintiff be awarded the following damages: (1) $58,348.15 for unpaid overtime wages under the NYLL; (2) $58,348.15 in liquidated damages; (3) $14.38 per day in pre-judgment interest, starting on October 11, 2018, until final judgment is entered; (4) post-judgment interest until the judgment is paid in full; and (5) $43,983.65 in attorney's fees

---

[31] As discussed at n.17, supra, in reviewing plaintiff's counsel's billing records, the Court saw that Lorena Duarte billed a $400 fee amount when she filed the Complaint, meaning that the filing fee appeared in the attorney billing records as well as the litigation costs. The Court's calculation of Duarte's fees does not include the filing fee, which is dealt with separately as a component of costs.

and costs.  The Court further respectfully recommends that the defendants be held jointly and severally liable for the judgment.

Finally, pursuant to Section 198(4) of the NYLL, when any judgment or court order awards remedies pursuant to the NYLL, "the total amount of the judgment shall automatically increase by fifteen percent" if any amounts of the judgment are not paid "upon the expiration of ninety days following issuance of the judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later."  N.Y. Lab. L. § 198(4).  Thus, the Court further recommends that if the district court adopts this Report and Recommendation and awards remedies pursuant to the NYLL, the total judgment should increase by fifteen percent if defendants do not fulfill the judgment or appeal in accordance with the required deadlines.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiff shall serve a copy of this Report and Recommendation on the defendants and file proof of such service on the record within two weeks of the date of this Report.

**SO ORDERED.**

Dated: Brooklyn, New York
September 4, 2024

_Cheryl L. Pollak_

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York